James M. O'REAR, Plaintiff-Appellant,

v.

**FRUEHAUF CORPORATION,**
Defendant-Third-Party
Plaintiff-Appellee.

**FRUEHAUF DISTRIBUTING COMPANY**
et al., Defendants,

v.

**G. G. ESPINOZA et al., Third
Party Defendants.**

No. 75–3987.

United States Court of Appeals,
Fifth Circuit.

June 27, 1977.

Rehearing Denied Aug. 5, 1977.

---

Franklin D. Houser, Robert C. Scott, San Antonio, Tex., for plaintiff-appellant.

Michael M. Fulton, San Antonio, Tex., for defendant-third-party plaintiff-appellee.

Before MORGAN and RONEY, Circuit Judges, and KING *, District Judge.

JAMES LAWRENCE KING, District Judge:

In this appeal, the issue presented is whether defense counsel's repeated reference to a parallel state court proceeding, in deliberate disobedience of the trial court's order forbidding such reference, coupled with the judge's refusal to permit plaintiff's counsel to respond to these references in final argument, was harmless error. Finding that it was not, we reverse.

This is a products liability action for damages arising from injuries sustained by O'Rear when a tractor-trailer came uncoupled, crossed over into the opposite lane of traffic and collided with O'Rear's automobile. The tractor-trailer, owned by Haag and driven by his employee Espinoza, was coupled with a fifth wheel device manufactured by Fruehauf. To preserve complete diversity of citizenship, O'Rear sued only Fruehauf in this action. However, Fruehauf brought Haag and Espinoza into the case as third-party defendants on a negligence theory for indemnification and contribution. O'Rear had previously sued Haag and Espinoza in state court for negligence, and the state case was still pending at the time of the federal trial.

O'Rear contended that Fruehauf's fifth wheel device was improperly designed so as to permit it to "false lock," thereby misleading a reasonably prudent truck driver

into the belief that the tractor-trailer was properly coupled and could not separate. Fruehauf's contention was that the device had not been properly coupled by the driver Espinoza, whose negligence thereby caused the accident.

Prior to trial, O'Rear's counsel (Houser) made a motion *in limine* [1] asking that Fruehauf's counsel (Fulton) be prohibited from telling the jury anything about O'Rear's state court action against Haag and Espinoza. This motion was granted and the trial judge ordered Fulton not to mention the state case.

After plaintiff rested, Fulton called Haag as an adverse witness and attempted to impeach him by the use of his deposition in the state case. During this examination, Fulton made repeated references to "a lawsuit that is presently pending against you in San Antonio" and to "the other lawsuit." Houser objected to these references and reminded Fulton and the court of the ruling on the motion *in limine*. The objections were sustained and the court instructed Fulton to abide by the ruling. The jury was instructed to disregard Fulton's remarks. Thereafter, Fulton asked, ". . . Mr. Haag, what agreement, if any, do you have with Mr. Houser that if you will cooperate with him in this litigation against Fruehauf—." Houser again interrupted with an objection which was sustained by the judge, who again cautioned the jury to disregard the remark. Fulton continued to bring to the jury's attention the fact that there were two lawsuits pending by underscoring "this particular lawsuit, this lawsuit here in federal court in Austin." Again objections were made and sustained. Finally, at one point during Haag's examination by Fulton, Haag's counsel moved for a mistrial. This was denied by the court.

---

* District Judge of the Southern District of Florida sitting by designation.

1. "A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a

timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds." Commentary, *The Motion in Limine: Pretrial Trump Card in Civil Litigation,* 27 U.Fla.Law.Rev. 531 (1975) (footnotes omitted).

At the close of all the evidence, the third-party defendants moved for dismissal. Argument was heard on the motion outside the hearing of the jury. Fruehauf contended that, on the facts of this case, the negligence of Espinoza caused the accident, even though it agreed that the law compelled dismissal in that a defendant sued for strict liability in tort could not maintain a third-party complaint for indemnification and contribution.

Houser was concerned about the jury's reaction to the dismissal of Haag and Espinoza just before final argument in light of Fulton's comments that (1) there was a pending lawsuit by O'Rear against Haag and Espinoza in state court, and (2) that some kind of deal or agreement had been reached between O'Rear and the third-party defendants Haag and Espinoza concerning their "cooperation" in this suit. This "cooperation" involved their testimony that they were not negligent and that the tractor-trailer had been properly coupled, supporting O'Rear's theory that the accident was caused by faulty design. However, the clear implication was that they were now being released from the lawsuit by O'Rear in return for their favorable testimony. Houser urged the court to allow him to explain to the jury that there had been no deal and that O'Rear had nothing to do with Haag's and Espinoza's being dismissed from the case. Furthermore, Houser was concerned that Fulton would make use of the dismissal of Haag and Espinoza during final argument by alluding to the "deal."

The court denied Houser's request, granted the motion to dismiss, and instructed both counsel not to allude to the dismissal except that it would appear in the court's jury charges. In addition, the judge instructed counsel not to "allude to the state case, any kind of deal or anything else of that nature." Fulton assured the judge four times during this discussion that he would not bring up these matters in his final argument.

Contrary to those assurances and in direct violation of the judge's instructions, Fulton nonetheless told the jury that it was O'Rear who had let Haag and Espinoza out of the case:

Mr. Fulton: '. . . Now, I think in this case that the obvious fault is with the driver, Espinoza, and Haag for using this worn-out equipment on the road, and the driver for not getting it locked. I think that the driver—there is no question that the driver and Haag, both were negligent for operating this trailer on the highways without the emergency breakaway. Remember Mr. Bentley drew the diagram, he said if the tractor had the type of brakes that would automatically come on when the tractor and trailer separated that the O'Rear car and the trailer would have stopped 125 feet apart and there wouldn't have been an accident. Can there be any question—can there be any question that Haag and Espinoza are at fault? Is there any question as to whether or not Mr. Houser would just let Mr. Haag and Mr. Espinoza just go off without—scot-free? Now —'

Mr. Houser: 'Your Honor, we have had it for the last time. Now, I am moving for a mistrial at this particular juncture. Your Honor, This is the fifth time that it has been brought up.'

Mr. Fulton: 'I am going to explain.'

Mr. Houser: 'It is too late.'

The Court: 'No, it is too late. We don't want any explanation about that last statement. Read it back, that last statement—something about why Mr. Houser let Mr. Haag and—'

Mr. Fulton: 'No, sir.'

The Court: '—and Espinoza go scot-free, or something like that.'

The Court Reporter: ' "Is there any question as to whether or not Mr. Houser would just let Mr. Haag and Mr. Espinoza just go off without—scot-free?" '

Mr. Fulton: 'Your Honor, I was going to explain—'

The Court: 'No, you wait a minute. The jury is instructed to disregard that last statement, get it out of your mind and don't consider it for any purpose whatsoever, that last statement, about letting

Haag and Espinoza go scot-free, so-and-so would do that.'

Mr. Fulton: 'Well, Your Honor, I will drop that. But, I was going to explain— but I will forget that.'

The motion for mistrial was not specifically ruled upon but the case was submitted to the jury. In his charge to the jury, the trial judge gave the following instructions pertinent to the prejudicial remarks of counsel and the dismissal of Haag and Espinoza:

Statements and arguments of counsel are not evidence and must not be considered by you as such. Also, any evidence as to which an objection was sustained or which may have been stricken by the court must be entirely disregarded. . .

In reaching your verdict you are not to consider or be concerned with any claim or potential claim involving Elmer Haag or F. F. Espinoza.

On appeal, O'Rear asserts that his substantial right to a fair trial by an impartial jury was violated by Fruehauf's counsel's repeated subjection of the jury to prejudicial information in disregard of the district court's orders.

◼ It is of course the duty of the trial judge to insure that all parties receive a fair trial. In discharging this duty, the trial judge must make rulings upon objectionable remarks by counsel and give appropriate cautionary instructions to the jury to disregard all prejudicial matter. The trial judge is "of necessity, clothed with a great deal of discretion in determining whether an objectionable question is so prejudicial as to require a retrial, . . . [and he] is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold

record." *Harris v. Zurich Insurance Co.,* 527 F.2d 528 (8th Cir. 1975).

◼ A trial judge, when faced with a motion for mistrial based on the submission of prejudicial information to a jury, must determine whether the error is harmless or whether it affects the substantial rights of the parties within the meaning of Fed.R. Civ.P. 61.[2] The test for this determination is set out in *Kotteakos v. United States,* 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, 1566–67 (1946):[3]

If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. [Citation omitted.] But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.

Fulton's prejudicial remarks without more might have been harmless error, for the judge gave cautionary instructions to the jury both during trial and in the jury charges. In this case, however, there is more. Fulton's final argument, contrary to specific court orders and his own assurances, deliberately reemphasized the impression he had been fomenting throughout the trial, that is, that Houser let Haag and Espinoza out of the case scott-free because of the "deal." Additionally, Houser was not allowed to rebut this false impression because of the court's ruling prior to final argument. The court's rulings on the motion *in limine* and prior to final argument

**2.** Fed.R.Civ.P. 61 provides:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial jus-

tice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

**3.** For the propriety of using the *Kotteakos* test in a civil context, *Kotteakos* being a criminal case, see *Conway v. Chemical Leaman Tank Lines, Inc.,* 525 F.2d 927, 929 n. 3 (5th Cir. 1976).

were equally binding on both counsel. Fulton chose to ignore the rulings and for the most part was allowed to do so by the trial judge; whereas Houser complied with the rulings and his client O'Rear was thereby prejudiced by his inability to rebut the false inferences Fulton had established. This disparity in treatment of counsel by the judge unfairly hamstrung O'Rear's counsel.

Furthermore, the cleansing effect of the cautionary instructions in this case is dubious for, as the trial judge himself observed during the trial, "[y]ou can throw a skunk into the jury box and instruct the jurors not to smell it, but it doesn't do any good." Stated another way, the bench and bar are both aware that cautionary instructions are effective only up to a certain point. There must be a line drawn in any trial where, after repeated exposure of a jury to prejudicial information, a judge realizes that cautionary instructions will have little, if any, effect in eliminating the prejudicial harm. It is at this point that a motion for a mistrial should be granted.

In this case we feel that point was reached immediately upon Fulton's damaging remarks in his final argument. At that point, the judge should have either declared a mistrial or allowed Houser the opportunity to rebut Fulton's false inferences in his final argument.

The judge's instruction that the jury was not to consider any claim of Haag or Espinoza did nothing to alleviate the erroneous impression created in the minds of the jurors, for it in no way explained to them why they were dismissed from the suit.

Considering the totality of circumstances in this case, we find that the prejudicial remarks, together with the denial of an opportunity for Houser to respond to those remarks, and the judge's inadequate jury instruction on Haag's and Espinoza's dismissal, all culminated in a "judgment substantially swayed by . . . error [and thus] it is impossible to conclude that substantial rights were not affected." *Kotteakos,* 328 U.S. at 764, 66 S.Ct. at 1248.

[When a trial court's control over prejudicial remarks of counsel] is lost or at least palpably ignored and the conduct is a set piece running the length of the trial which produces a warped version of the issues as received by the jury, then that body never did have the opportunity to pass upon the whole case and a judgment based on that kind of a twisted trial must be set aside. . . . [W]here, as here, there has been calculated sustained improper conduct producing biased issues as they went to the jury we cannot decline to act. . . . Appellant thereby was deprived of [his] right to a fair trial. Civil or criminal, a trial is not a contest in which no holds are barred. It is the determination of basic rights under our Constitution. Knowledge, skill and experience in the presentation of the contentions of the parties are helpful to the court and jury[,] but misused to deprive a litigant of [his] day in court[,] the result can be as it is in this appeal. Winning, so called, at all costs puts the cost too high. *Straub v. Reading Company,* 220 F.2d 177, 182 (3d Cir. 1955).

Appellant's remaining issue on appeal is that it was error for the trial judge to refuse to allow interviews of the jury by counsel after the verdict. In an oral motion during the trial, Houser alleged that Fulton had been seen speaking with courtroom spectators during the recess who were later observed leaving the courthouse in the presence of jurors. Fulton assured the judge that he had not discussed the case with any of the spectators.

This court has recently discussed the issue of post-verdict interrogations of the jury. In *United States v. Riley,* 544 F.2d 237, 242 (5th Cir. 1976), we said:

Historically, interrogations of jurors have not been favored by federal courts except where there is some *showing* of illegal or prejudicial intrusion into the jury process. In each case submitted to this Court supporting such an inquiry into the deliberative process, specific instances of misconduct were shown by testimony or affidavit. A party attacking the integrity of a jury on the ground of a

juror's prejudice must prove prejudice by a preponderance of the evidence. [Citation omitted.] . . . Courts simply will not denigrate jury trials by afterwards ransacking the jurors in search of some ground, not previously supported by evidence, for a new trial. (Emphasis in original.)

Although affidavits of Houser and his co-counsel were submitted to the court on this issue together with the motion for a new trial, they merely restated the allegations of Houser's previous oral motion. There was nothing alleged in the affidavits demonstrating improper conveyance of information to the jury. We find that Houser's allegations were merely speculative and that he did not sustain his burden of showing an "illegal or prejudicial intrusion into the jury process." The trial judge instructed the jury throughout the trial not to discuss or allow anyone else to discuss the case with them. We cannot presume, without an affirmative showing, that the jury failed to follow these instructions. In denying the motion to interview jurors, the trial judge did not abuse his discretion.[4]

We hold that the cumulative effect of the prejudicial statements, the denial of an opportunity for appellant to respond to those statements, and the inadequate jury instruction on the dismissal of the third-party defendants, prevented appellant from receiving a fair trial.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

4. There are strong policy reasons why jury interrogations are disfavored. In *United States v. Crosby*, 294 F.2d 928, 950 (2d Cir. 1961), *cert. denied, sub nom. Mittelman v. United States*, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962), the court said;

> There are many cogent reasons militating against post-verdict inquiry into jurors' motives for decision. The jurors themselves ought not be subjected to harassment; the courts ought not be burdened with large numbers of applications mostly without real

merit; the chances and temptations for tampering ought not be increased; verdicts ought not be made so uncertain. Whenever information erroneously reaches the ears of the jury in open court, the judge's instruction to disregard it may be disobeyed; yet it is not suggested that in such a case the jury ought be polled as to whether any of them relied on the forbidden knowledge. . . . *The same reasons apply when the improper knowledge reached the jury outside the courtroom.* (Emphasis supplied.)