396 So.2d 326 (1981)
Autry BORNE et al.
v.
MIKE PERSIA CHEVROLET COMPANY, INC. et al.
No. 11683.
Court of Appeal of Louisiana, Fourth Circuit.
February 19, 1981.
Rehearing Denied April 20, 1981.
*328 Christopher M. Smith, Slidell, for plaintiffs. Bernard, Cassisa, Babst & Saporito, Walter M. Babst, Metairie, for General Motors Corp.
Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Harvey L. Strayhan, New Orleans, for Mike Persia Chevrolet Co., Inc.
Before REDMANN and SCHOTT, JJ., and EDWIN R. HUGHES, J. Pro Tem.
REDMANN, Judge.
General Motors Corporation appeals from a judgment on jury verdict (1) against it and its dealer in solido awarding $200 as a reduction in the price of a defective automobile it manufactured (with judgment over for its dealer against itself) and (2) against it alone for $1,500 attorney fees. Plaintiff purchaser answers the appeal, asking increase in quantum and additional attorney fees for the appeal. We affirm.
The principal issues raised by the manufacturer are whether La.C.C. 2545's provision for attorney fees against a "seller, who knows the vice of the thing he sells and omits to declare it" authorizes fees against a manufacturer charged by law with knowledge and, if so, whether the provision as applied to a manufacturer affords due process and equal protection of law. Included in these arguments by the manufacturer is the complaint that the $1,500 award is excessive. Another issue is procedural: may a dismissed co-plaintiff appeal against a defendant by answer to that defendant's appeal from an award in favor of another co-plaintiff?
The manufacturer does not make an issue of whether the defect was proven to exist, nor of the quantum of reduction ordered, nor of its dealer's judgment over against itself.

Facts
The record supports a conclusion that the pulley on the automobile's power steering pump was visibly out of plane with the pulley on the front of the crankshaft by about 3/8", as a consequence of which the belt between those two pulleys entered at a slight angle. The belt would jump off the pulley at times leaving the car without power steering and therefore hard to steer. Plaintiff purchaser took the car to defendant dealer and explained the trouble on at least two occasions, but the defect was not remedied. Plaintiff purchaser testified that he personally replaced many belts that the car had lost or destroyed.
Proper alignment of the pulleys can be accomplished by adjusting the power steering pump's mounting or by relocating the pump's pulley on its shaft at a cost of no more than $50.
The defect remained uncorrected and finally occasioned an accident. The purchaser's daughter-in-law and son were rounding a highway curve when the belt broke, the son lost control, and the car left the road, damaging its left rear fender and allegedly the daughter-in-law and son. The purchaser, his daughter-in-law and son thereafter filed this suit.

Effect of Answer to Appeal
The answer to the appeal, mentioned at the outset, also urged the dismissed personal injury claims of the daughter-in-law and son. (The jury verdict found that they had assumed the risk.) We conclude *329 that their claims are not brought before us by the answer to General Motors's appeal because they are not appellees. It is only an "appellee," C.C.P. 2133, who can appeal against an appellant by answer to that appellant's appeal. Webster's New International Dictionary (2d ed.) defines appellee as "one against whom an appeal is taken," and Black's Law Dictionary (rev. 4th ed.) defines appellee as "The party in a cause against whom an appeal is taken; that is, the party who has an interest adverse to setting aside or reversing the judgment."
As to the losing co-plaintiffs, the daughter-in-law and son, General Motors could not take an appeal, and the success of any appeal by General Motors could not affect them. This case is thus unlike Monk v. Veillon, La.App. 3 Cir. 1975, 309 So.2d 377, in which the plaintiff's appeal from a judgment giving him damages against two defendants, but dismissing two others, could have sought increased damages from the two defendants cast notwithstanding plaintiff's attempt to "limit" his appeal so as to affect only the two defendants dismissed.

Quantum of Price Reduction
Complaining of the award of $200 as a reduction in the price of the car, plaintiff argues that the jury's answers to interrogatories show an intent to award him $1,000. We disagree. The only anomaly was the interrogatory how much "plaintiff's award [should be] reduced" because of his use of the car. That question, which the jury answered, was not phrased, as would have been preferable, to the effect that if the jury found that the sale should be avoided and the price returned to the purchaser, whether and by how much the use of the car should offset the return of the price. But the jury's answer shows only that, had it held the sale avoidable, it would have awarded plaintiff a net of $1,200 ($6,000 price $4,800 for use), and plaintiff would have had to return to defendants the car, which was then only 32 months old. The jury thus cannot have intended to award $1,000 to plaintiff and let him keep the car because that would require a belief that the 32-month-old car was worth only $200.
Because repair of the defect would cost only a few dollars and the lost belts cost but a few dollars each, the jury's award of $200 was not inadequate.

Applicability of C.C. 2545
Defendant manufacturer understates the law in conceding that, in view of Media Pro. Consult., Inc. v. Mercedes-Benz of N.A., Inc., 1972, 262 La. 80, 262 So.2d 377, "it is not at all certain that this [intermediate appellate] Court has the authority to seriously entertain this particular issue" of whether a manufacturer is governed by La.C.C. 2545. The manufacturer suggests that its attack on the constitutionality of the interpretation of that law by Media authorizes us to reject that interpretation in favor of one that would avert the constitutional questions. We do not have that authority, although we do have not merely the authority, but the obligation, U.S.Const. Art. 6, to invalidate state law that denies due process or equal protection.
We add that the manufacturer's position that it is not a seller ignores that it does indeed sell its automobiles to its dealers and in a true sense, through its national advertising campaigns and the good repute it has, it sells to the public, though through its dealers. It is no detraction from the good name of Mike Persia Chevrolet Company to say that it is rather the Chevrolet than the Persia that attracts customers and sells them automobiles. And, though the manufacturer argues it did not conceal the defect, it did "omit to declare it."
We summarize the statutory and jurisprudential rules. C.C. 2545 makes the "seller, who knows the vice of the thing he sells and omits to declare it" liable for the buyer's reasonable attorney fees "besides the restitution of price," thus expressly governing a redhibition or avoidance of the sale. C.C. 2544, however, subjects an action for a reduction in price "to the same rules and to the same limitations as the redhibitory action." Thus plaintiff's obtaining only *330 a reduction in price does not defeat his claim for his reasonable attorney's fees for his alternative action to reduce the price. Finally, notwithstanding that the heading of the Civil Code paragraph containing art. 2545 is "Of the Vices ... which the Seller has Concealed from the Buyer" (emphasis added), Media ruled that the manufacturer is charged with knowledge of the defect and is therefore liable to the purchaser for the knowing seller's liability under C.C. 2545. (We deem that ruling unaffected by La. Acts 1974 No. 673 § 1, amending C.C. 2531 to give the "seller" a remedy against the "manufacturer.") Here, we add, the character of the defect suggests not merely actual knowledge, but actual fault on the part of the manufacturer's employee(s) who improperly installed the pump or the pulley and the belt.
C.C. 2545 applies.

Constitutionality of C.C. 2545
The manufacturer's due process and equal protection arguments proceed from the premise that it is unjustifiable, either in an absolute sense, and therefore a deprivation of due process, or at least in a relative sense in a legal system that as a rule does not similarly treat other losing litigants, and therefore a denial of equal protection, to oblige a manufacturer to pay consumers' attorney fees reasonably expended to obtain relief from the purchase of the manufacturer's defective product.

A. Due Process
The manufacturer theorizes the imposition of attorney fees is absolutely unjustifiable because it irrationally penalizes a manufacturer for not performing an impossibility: for not disclosing a defect the manufacturer did not in fact know and therefore could not disclose.
We repeat that the defect here was in fact not a hidden defect as to this manufacturer (like one created by the manufacturer of some component) but an evident one. This manufacturer's own employee created it and ought not to be heard to say that he or she did not see what was in plain sight. Thus this manufacturer, as to this defect, has no standing to raise the issue of the constitutionality of applying the statute to a manufacturer all of whose direct employees are in fact ignorant of the defect  ignorant, for example, because the defect exists hidden within some component manufactured by another. Thus the only imputation of knowledge in this case is that of employee to inanimate corporate employer, an imputation that has inescapably existed from time immemorial.
The statute, in any case, is not penal in its operation or intent. It simply assigns the cost of contract litigation over actual defects in products to the enterprise that, by placing into commerce a defective product and failing to provide effectively for its repair or replacement, has generated the litigation. The buyer's reasonable attorney fees are nothing more than an element of the buyer's damage from the defective product an element that is as a practical matter avoidable by the manufacturer through an effective system for repair or replacement. The basic rule in Louisiana is not that attorney fees are not an element of damage, but only that they are ordinarily not recoverable, C.C. 3198.

B. Equal Protection
Nor is this manufacturer denied equal protection of the law by the law's imposing attorney fees upon a manufacturer that knows its product's defect (as a knowing seller) in a redhibition or reduction action, while not imposing attorney fees upon other losing litigants in other kinds of actions, and especially while not imposing attorney fees upon purchasers in unsuccessful redhibition or reduction actions.
Federal equal protection requirements are met if the "statutory classification bears some rational relationship to a legitimate state purpose," Weber v. Aetna Cas. & S. Co., 1972, 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768, and the state's interest need be "compelling" only when suspect classifications such as race, McLaughlin v. Florida, 1964, 379 U.S. 184, *331 85 S.Ct. 283, 13 L.Ed.2d 222, and alienage, Nyquist v. Mauclet, 1977, 432 U.S. 1, 97 S.Ct. 2120, 53 L.Ed.2d 63, demand strict rather than the ordinary deferential scrutiny. The Louisiana equal protection requirement is similar to the deferential scrutiny of Weber; Succession of Robins, La. 1977, 349 So.2d 276.
Before Louisiana had statehood, it had a strong policy of demanding that things sold not have hidden and undisclosed defects, and of protecting purchasers against buying things that did; Digest [Code] of 1808, p. 356, arts. 65 and 70. The purchaser was entitled always to a reduction in price, and often to avoid the sale, in cases of the defect's making the use of the thing so inconvenient that it "must be supposed," C.C. 2520, that the purchaser would not have purchased had the defect been known. There was perhaps no equal in the entire United States of the broad scope of the Louisiana Code's protection of consumers against hidden defects in things purchased.
The theoretical protection, however, is at best incomplete when sellers do not comply with those ancient laws but instead afford neither repair nor replacement of the defective thing, and the consumer cannot afford the cost of obtaining his legal right. If the defective thing is of relatively small value, or if the thing is costly, but the defect could result only in a small reduction in price (as in the present case), it is not economical for the purchaser to pay a lawyer to bring a redhibition or reduction action. Winning a defective product case is of no value to the consumer beyond the one claim, but may be of value to the manufacturer (or dealer or other professional seller) for many other similar cases. This basis alone might justify awarding the winning consumer fees while denying them to the winning manufacturer. But the radical fairness of imposing upon the knowing seller (including the manufacturer) a successful purchaser's redhibition or reduction attorney fees is that that class exhausts the causers of the litigation and that imposing its cost upon them makes reality out of the theoretical protection of the purchaser that Louisiana has sought by law throughout its history.
No similar factual characteristic exists in other losing litigants. The classification of knowing sellers, including manufacturers, apart from other losing litigants therefore has a rational relationship to the legitimate legislative goal.

Quantum of Attorney Fees
We preliminarily reject the manufacturer's argument that it should pay no fees because the plaintiffs' settlement demands were exorbitant, the lowest pre-trial offer being $4,750. First, this argument aims at the wrong offer: if the manufacturer had offered over $200 it would have an attractive argument, similar to that which defeats liability for court costs, in that the final award would show that the litigation was not its fault but that of an unreasonably demanding purchaser. Second, even an immediate $200 offer in response to a lawyer's first demand letter would not reduce fees to zero but only to the reasonable amount that far earned. The time for a manufacturer to keep consumers' attorney fees at zero is when the consumer first returns to complain to the dealer because once the consumer must go to a lawyer some reasonable fee is earned.
The manufacturer cites Guillory v. Pitre Ford Co., La.App. 3 Cir. 1977, 345 So.2d 1274, while conceding its uniqueness, for its refusal to award attorney fees against a manufacturer against whom a price reduction was ordered. Guillory did recite as the law the manufacturer's presumed knowledge of the defects and consequent liability for damages and attorney fees. But Guillory took the view that an automobile's inadequate weld was not a defect until the weld broke and therefore the manufacturer "had no knowledge of the defect at the time of the sale and is not liable for damages or attorney's fees." 345 So.2d at 1276. Whether or not that reasoning has any merit, it does not apply here, where the defect existed at all times in its final state.
*332 On the simple question of quantum we note that the interrogatory to the jury was "What reasonable attorney fees should be awarded for the Autry Borne claim?" That question indicates not only that the daughter-in-law's and son's claims should not be considered, but also fairly implies that it is only for work on the successful claim of the purchaser (and not his unsuccessful claim for complete avoidance of the sale) that reasonable fees should be fixed.
We would ordinarily grant an added fee on appeal but we conclude that $1,500 adequately pays counsel for both the trial and the appeal insofar as they related to the claim for reduction in price, in respect to which alone the purchaser was successful.
Affirmed.