444 So.2d 1300 (1984)
John THOMAS
v.
W & W CLARKLIFT, INC. and Reliance Insurance Company.
No. CA-0685.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1984.
Rehearing Denied February 22, 1984.
Writ Denied April 13, 1984.
*1301 Harold B. Carter, Jr., Diane K. Zink, Montgomery, Barnett, Brown & Read, New Orleans, for third party plaintiffs.
Daniel J. Caruso, Michael R. Daigle, Simon, Peragine, Smith & Redfearn, New Orleans, for third party defendants.
Before REDMANN, C.J., and GULOTTA and AUGUSTINE, JJ.
REDMANN, Chief Judge.
W & W Clarklift, Inc. completely overhauled a used forklift truck and sold it to Dennis Sheen Transfer, Inc. Three weeks later Sheen employee John Thomas was seriously injured when the forklift's 6,000-pound *1302 counterweight fell upon him as that forklift was raised a few inches by another. Thomas sued Clarklift, who third-partied the John Leckerts, Sr. and Jr., the principal executive officers of Sheen. Thomas's demand was settled. The third-party demand was dismissed after trial on the merits. Clarklift now appeals.
The question is whether the Leckerts were also liable to Thomas for his damages so as to make them liable in solido with Clarklift, La.C.C. 2091, entitling Clarklift to contribution from the Leckerts, C.C. 2103, unless "the affair ... concern only one of the co-obligors in solido, [in which case] that one is liable for the whole debt towards the other codebtors ...," C.C. 2106. We conclude that any liability the Leckerts might have is not the result of their personal fault but only of a vicarious or strict liability for the fault of Clarklift, and that therefore, in the words of C.C. 2106, the affair concerns only Clarklift and Clarklift is liable for the whole debt towards the Leckerts. We affirm the rejection of Clarklift's demand for contribution from the Leckerts.
On this particular forklift (unlike on others Sheen had, whose counterweights are mounted with four bolts), the counterweight is mounted by letting it down upon two heavy, somewhat wedge-like brackets that angle upwards from the forklift frame and fit snugly into two matching-angled recesses in the counterweight itself. The counterweight has a vertical, molded shape that appears to be a continuation of the body of the forklift. Once it is properly positioned, gravity holds it against the frame, although it is intended to be finally secured by a single bolt, 12 or 13 inches long and an inch or more in diameter, that is recessed five inches into the counterweight, 16 inches above floor level, and screws through the counterweight into the frame.
Clarklift concedes on appeal that the securing bolt was not present on the forklift in question when delivered to Sheen.
The forklift became stranded on the concrete floor of a 70' by 120' shed in Sheen's equipment yard when its drive wheel lost contact with the floor, either because the forklift lodged atop a wooden chock used to keep trailers in place, as Sheen employee Frank Burns testified, or because the wheel went into a shallow depression in the floor, as John Thomas testified. To free the forklift, Burns intended to lift it with another forklift just enough to enable Thomas either to remove the chock from underneath or to place a chock beneath the wheel to restore traction. When Burns lifted with the second forklift, the first forklift's unbolted counterweight was lifted off its supporting brackets and fell upon Thomas, causing his injuries.
Clarklift argues that the Leckerts, as executive officers of Sheen, had the responsibility of discharging Sheen's statutory duty to provide reasonably safe equipment and a reasonably safe place to work, La. R.S. 23:13, and breached that duty by allowing wooden chocks to be on the shed floor, by failing to inspect the forklift or to have it inspected, and by failing to instruct subordinate employees in proper forklift operation.
The Leckerts would be personally liable if they neither prevented nor reasonably delegated to a subordinate the prevention of a dangerous floor condition that was a legal cause of Thomas's injury. But that is not our case. Our less than ideal floor condition may satisfy the "but for" element of duty-risk analysisas does Thomas's having got out of bed that day but no other element. It is true that the forklift would not have become stranded if the floor had been level and no chock had been present (just as Thomas would not have suffered this injury had he stayed in bed). But the only legal duty of Sheen and therefore of the Leckerts is to provide a reasonably safe floor: the Leckerts did not have the legal duty to provide an ideal floor (just as Thomas did not have the legal duty not to get out of bed that day). Moreover, the duty to provide a reasonably safe floor is not designed to protect against the risk that a forklift with a concealed counterweight-bolt missing might become stranded on a non-level surface, and might require being lifted to free it, which might cause *1303 the unsecured counterweight to fall upon an employee. There is no ease of association between a slight depression in the floor, or a wooden chock's presence, and injury from the absence of a counterweight bolt. In fact, one employee testified that in his 30 years with Sheen it had never previously happened that a forklift had become stranded on a chock. It is not the unlevel floor and the stranding of the forklift that puts the bystander at risk, but the attempt to free the forklift when (a) the counterweight is unsecured and (b) the person lifting it does not inspect to determine whether it is secured.
Nor was any failure by the executives to properly instruct employees in forklift use a legal cause of the injury. The testimony is uncontradicted that lifting a stranded forklift (e.g., on riverfront docks) is standard practice. It presents no risk of dislodging a secured counterweight. There is no legal duty towards persons nearby not to lift a stranded forklift with another to free it. At most there is a duty to ascertain that the counterweight is secured before lifting, and to include advice to do so in proper instruction in forklift use.
Thus, whether because of a faulty floor or failure to instruct or the direct charge of failure to inspect or have inspected, the theories by which Clarklift charges the Leckerts with personal negligence all resolve into failure to inspectfailure to discover Clarklift's negligence. On this record, it cannot be said that the Leckerts knew or should have known of the missing bolt; it was not only not obvious but was in fact concealed by its deeply recessed position towards the bottom of the counterweight.
Conceivably, as between Thomas and Sheen, Sheen (but for the exclusivity of workers' compensation, R.S. 23:1032)and conceivably Sheen's executive officers could have some strict liability toward Thomas, perhaps as the custodian of a dangerously defective thing, C.C. 2317, or perhaps for failure to provide reasonably safe equipment, R.S. 23:13. But as between Clarklift and Sheen (or Sheen's officers charged with discharging Sheen's responsibility), it is Clarklift that is directly responsible for its personal failure to install the securing bolt, while Sheen and Sheen's executives have only the vicarious liability without actual fault that C.C. 2317 or R.S. 23:13 impose in favor of the injured thirdparty or employee.
Furthermore, as between Clarklift as seller-overhauler and Sheen as buyer of the overhauled forklift, the codal articles on sales are applicable, even in a "tort" case, Philippe v. Browning Arms Co., 395 So.2d 310 (La.1980). The complete overhauling that this record shows that Clarklift undertook, to sell this forklift with contractual "warranty" (although for 45 instead of 90 days) otherwise reserved for new equipment (instead of "as is," reserved by its printed form for used equipment), justifies treating Clarklift as the manufacturer of this forklift, in the sense that Clarklift must be charged with knowledge of its defects; see Media Pro. Consult., Inc. v. Mercedes-Benz of N.A., Inc., 262 La. 80, 262 So.2d 377 (La.1972). (Indeed, the extent of this overhaul justifies the conclusion that some Clarklift employee was actually at fault in failing to install the retaining bolt; see Borne v. Mike Persia Chevrolet Co., Inc., 396 So.2d 326 (La.App. 4 Cir. 1981).) The consequence is that Clarklift is properly treated as a "seller, who knows the defect of the thing he sells and omits to declare it, ... answerable to the buyer in damages," C.C. 2545. Any liability that Sheen would have (but for the exclusivity of workers' compensation) towards Thomas because of vicarious liability for the latent defect that Clarklift "knows ... [but] omits to declare" is a damage to Sheen for which Clarklift would be liable to Sheen under C.C. 2545. Sheen could not, therefore, be liable to Clarklift for contribution (even ignoring exclusivity) notwithstanding any theoretical solidarity of liability between Clarklift and Sheen towards Thomas. The breach of Sheen's obligations towards Thomas in respect to discovering latent defects thus cannot make Sheen liable towards Clarklift. And therefore, because the executive officers have only Sheen's *1304 obligations towards Thomas in respect to discovering latent defects, their breach by the executive officers do not make the executive officers liable towards Clarklift.
In summary, the executive officers can only be liable to Thomas because of failure to inspect for Clarklift's negligence or because of strict liability for Clarklift's negligence. In either case the fault is Clarklift's insofar as the executive officers are concerned, and the executive officers' liability is only vicarious for the negligence of Clarklift.
Accordingly, notwithstanding the possibility that the executive officers might have been liable in solido with Clarklift towards Thomas, and that C.C. 2103 ordinarily allows contribution among solidary co-obligors, in this case C.C. 2106 dictates that Clarklift be denied contribution: the "affair ... concern[s] only one of the co-obligors in solido, [and] that one is liable for the whole debt towards the other codebtors...."
Affirmed.