# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30054

United States Court of Appeals
Fifth Circuit

**FILED**
November 26, 2014

Lyle W. Cayce
Clerk

HOLLYBROOK COTTONSEED PROCESSING, L.L.C.,

Plaintiff - Appellant Cross-Appellee

v.

AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY,

Defendant - Appellee Cross-Appellant

Appeals from the United States District Court
for the Western District of Louisiana

Before REAVLEY, SMITH, and SOUTHWICK, Circuit Judges.

REAVLEY, Circuit Judge:

In this appeal involving an insurance dispute both the plaintiff and defendant appeal rulings by the district court. We conclude that there was no error in the district court's order granting a new trial, or its determination that the jury's damage award was covered under the applicable insurance policy, but we conclude that the district court incorrectly determined that the plaintiff's attorney's fees were not covered by the policy. We therefore AFFIRM in part and REVERSE in part the district court's judgment and REMAND for further proceedings.

No. 14-30054

I.

Plaintiff Hollybrook Cottonseed Processing, L.L.C. ("Hollybrook") contracted with Carver, Inc. for certain cotton processing equipment as part of its operation of a cotton mill in Louisiana. Carver's equipment suffered repeated mechanical breakdowns, causing Hollybrook to experience significant downtime of its entire plant and to lose the use of other non-Carver downstream equipment. Hollybrook sued Carver in state court for breach of contract and redhibition. It also sued Carver's primary insurer, Sentry Insurance Company, and its excess insurer, Defendant American Guarantee & Liability Insurance Company ("American"), under Louisiana's direct action statute. After the defendants removed the case to federal court, Hollybrook settled its claims against Carver and Sentry and proceeded against American. Prior to trial, the district court held on summary judgment that American's policy provided coverage for Hollybrook's claims.

On the next-to-last day of an eleven-day trial, American's counsel elicited testimony from a Carver employee that Hollybrook had demanded that Carver give it new equipment and $750,000. This testimony violated the district court's pre-trial order on a motion in limine that precluded the parties from disclosing information about offers of settlement and statements made during settlement negotiations. Hollybrook immediately objected and moved for a mistrial. The district court determined that counsel's conduct had been intentional and later sanctioned counsel, but it deferred ruling on the motion for a mistrial. The court gave an immediate curative instruction and polled the jury for assurance that the jurors could ignore the improper settlement evidence. On the next day of the trial the jury returned a verdict in favor of Hollybrook, awarding damages of $1,750,000, which was far below the amount of damages Hollybrook claimed that it had suffered.

No. 14-30054

Hollybrook moved for a new trial on the ground that defense counsel's misconduct had tainted the jury. The district court granted the motion, finding that counsel's intentional misconduct and the close fit between the jury's damages award and the settlement offer left it with no fair assurance that the jury had ignored the inadmissible evidence. The court therefore ordered a new trial as to damages only.

The second trial was conducted before a different district court judge. The second jury also returned a verdict in favor of Hollybrook but awarded damages of over $6 million. The award consisted of lost profits of $3.5 million, the purchase price of the Carver equipment of $381,042 (the amount of which had been stipulated by the parties), and "other compensatory damages" of $2.5 million. In post-trial briefing, American again challenged the district court's insurance coverage determination made on summary judgment, while Hollybrook additionally sought to recover its attorney's fees as damages allowed by Louisiana's redhibition statute. The district court reaffirmed the initial coverage determination but it also determined that Hollybrook's attorney's fees were not damages covered by the relevant policy.

American now appeals the district court's grant of a new trial and the court's coverage determination made on summary judgment. Hollybrook also appeals, arguing that the district court erroneously denied it recovery of its attorney's fees.

II.

American argues that the district court erroneously granted a new trial and that the first jury verdict should be reinstated because it was not against the great weight of the evidence. We review the district court's decision on a motion for a new trial for an abuse of discretion. *Carr v. Wal-Mart Stores, Inc.*, 312 F.3d 667, 670 (5th Cir. 2002). An order granting a new trial is reviewed more broadly than an order denying one, but an abuse of discretion remains

necessary for reversal. *Carson v. Polley*, 689 F.2d 562, 570 (5th Cir. 1982). If "the issues are complex, the evidence is controverted, or the conduct of the trial was tainted, 'we will affirm a new trial order even if on our own review of the "cold record" we are not convinced that the jury verdict was against the great weight of the evidence.'" *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citation omitted).

When, as here, the district court is faced with a motion for a mistrial based on the submission of prejudicial information to the jury, the district court must decide whether the error is harmless by assessing whether "'the error did not influence the jury, or had but very slight effect.'" *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1308 (5th Cir. 1977) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764, 66 S. Ct. 1239, 1248 (1946)). We find no abuse of discretion in the district court's determination of this question. As noted above, the improper testimony about the settlement offer came shortly before the case was submitted to the jury, and it therefore would have been somewhat fresh in the jurors' minds. Furthermore, there is no discernable basis for the jury's award apparent from the evidence presented on damages, and American offers no explanation for how the jury might have arrived at its verdict.[1] Instead, the jury's award of $1,750,000 is exactly $1 million more than the settlement offer about which it heard. Moreover, the jury also indicated during the course of its deliberations that it was deadlocked on an unspecified matter, yet it returned its verdict soon after receiving additional instructions. All of these circumstances raise questions about how the jury arrived at its verdict and suggest that the jury simply added $1 million to the amount it believed Hollybrook had been willing to accept.

---

[1] Although Hollybrook claimed at trial that its damages ranged from $5.9 million to over $15 million, it is unclear how the jury calculated its damages amount despite finding in Hollybrook's favor as to liability.

No. 14-30054

American argues that because the improper testimony was brief and did not permeate the trial, it did not influence the jury. However, "[t]he trial judge is 'of necessity, clothed with a great deal of discretion in determining whether an objectionable question is so prejudicial as to require a retrial, . . . (and he) is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record.'" *O'Rear*, 554 F.2d at 1308 (citation omitted). In light of the totality of the circumstances, we find no abuse of discretion in the district court's conclusion that it had no fair assurance the jury was not influenced by the inadmissible settlement testimony. *See id.* ("'[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.'" (citation omitted)).

## III.

American next argues that policy exclusions for the insured's work product should have precluded coverage for the jury's damages award rendered at the second trial. We affirm the district court's judgment, however, for the same reasons articulated by the district court.

The "work product" provisions in the policy precluded coverage for "'[p]roperty damage' to 'your product' arising out of it or any part of it" and for "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" American contends that because all of Hollybrook's damages arose from the injury to the Carver equipment, the work product exclusion applies to preclude coverage.

We agree with the district court that under Louisiana law the "work product" exclusion is intended "to 'avoid the possibility that coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship.'" *Supreme Servs. & Specialty Co. v. Sonny Greer,*

5

*Inc.*, 958 So. 2d 634, 641 (La. 2007) (citation omitted).  The district court correctly held that while the exclusion precludes coverage for damages due to the repair or replacement costs of the insured's actual equipment, it does not preclude coverage for loss resulting from damage to other property.  *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 883-84 (5th Cir. 2009); *see also Todd Shipyards Corp. v. Turbine Service, Inc.*, 674 F.2d 401, 421 (5th Cir. 1982) (holding that an "injury to work" exclusion "carves out of the policy damage to the particular work performed by the insured, but not the overall damage that the incorporation of the defective work product causes to the entire entity"); *Bollinger Shipyards Lockport, L.L.C. v. AmClyde Engineered Prods.*, 2003 WL 21396773, at *6 (E.D. La. Jun. 11, 2003) (unpublished) ("The work product exclusion precludes recovery for damage to the product itself.  Coverage remains for personal injury and 'other property' damage." (citation omitted)).

Here, Hollybrook's damages occurred not only from the injury to the Carver equipment but also from the loss of use of the entire plant, which the district court held was damage to other property under the policy and was not excluded by the "work product" exclusion.[2]  *See Martco*, 588 F.3d at 883 ("[L]oss of use was suffered by the OSB plant as a whole.  These injuries were presented at trial through evidence of specific instances of plant-wide downtime caused by the various mechanical failures of the Wellons unit."); *Todd Shipyards Corp.*, 674 F.2d at 423 (holding that a "work product" exclusion precluded recovery of the cost to repair or replace a turbine, which the insured had negligently repaired, but that economic losses from the loss of use of the entire ship as a result of downtime were not excluded because the ship was "indisputably property other than the insured's work product").  American fails

---

[2] No party disputes that, under the "work product" exclusion, the district court correctly excluded from the judgment the purchase price of the Carver equipment.

No. 14-30054

to show that the "work product" exclusion unambiguously applies to the loss of use of the entire plant in this case.[3] *See Martco*, 588 F.3d at 880 (holding that insurer bears the burden of proving that an exclusion to coverage unambiguously applies).

## IV.

Hollybrook appeals the district court's refusal to include its attorney's fees in the judgment because the court determined that the fees were not "damages" covered by American's policy. Hollybrook argues that there was coverage because American's policy covered all sums that its insured, Carver, was legally obligated to pay as damages, and, under Louisiana law, a plaintiff's attorney's fees are an element of damages in a redhibition suit. It asserts that American has failed to show any policy exclusion that precludes coverage for the attorney's fees. We agree with Hollybrook.

American's policy required it to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' included within the 'products-completed operations hazard.'" The relevant question in this case is whether the attorney's fees were "damages" caused by property damage. Because the policy does not define the word "damages" it is given its ordinary meaning, and any ambiguity must be resolved against the insurer in favor of coverage. *See, e.g., Reynolds v. Select Props., Ltd.*, 634 So. 2d 1180, 1183 (La. 1994).

Under Louisiana law, attorney's fees ordinarily are not recoverable unless specifically authorized by statute or contract. *See Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 763 (La. 1985); Russ Herman,

---

[3] We are also not persuaded by American's argument that aside from lost profits there was no evidence of, and therefore no coverage for, the "other compensatory damage" awarded by the jury. As Hollybrook points out, there was evidence of construction costs to build out the plant and losses from its inability to meet forward contracts outstanding when the plant closed.

7

1 *La. Prac. Pers. Inj.* § 5:14 (2014). In a redhibition suit attorney's fees are expressly allowed. *See* La. Civ. Code art. 2545. State law provides that a manufacturer of a defective product may be found liable to the buyer of the product in a redhibition action for "the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and *also for damages and reasonable attorney fees.*" *Id.* (emphasis added).

American argues that attorney's fees and damages are two separate remedies, and that the fees are considered to be a penalty rather than a part of a party's damages. However, Louisiana courts have specifically stated about redhibition actions that "[t]he buyer's reasonable attorney fees are nothing more than an element of the buyer's damage." *Borne v. Mike Persia Chevrolet Co.*, 396 So. 2d 326, 330 (La. Ct. App. 1981). In *Borne*, the court addressed a constitutional challenge to the redhibition statute, stating that the statute "is not penal in its operation or intent" but rather "simply assigns the cost of contract litigation over actual defects in products" to the party responsible for the litigation. *Id.* As such, the rule in Louisiana "is not that attorney fees are not an element of damage, but only that they are ordinarily not recoverable." *Id.*

American points to cases that it argues characterize attorney's fees as a penalty, *see, e.g., Sharbono v. Steve Lang & Son Loggers*, 696 So. 2d 1382, 1386 (La. 1997), and *Devillier v. Fidelity & Deposit Co. of Maryland*, 709 So. 2d 277, 282 (La. Ct. App. 1998), but those cases did not involve redhibition and are inapposite. For example, one commentator on Louisiana law has correctly explained that the legislative history of the redhibition article "clearly stated that its purpose was to include attorney fees in the liability for damages of . . . a seller." Ronald J. Scalise, Jr., 6 *La. Civ. L. Treatise, Law of Obligations* § 12.22 (2d ed. 2014); *see also Harris v. Bardwell*, 373 So. 2d 777, 783-84 (La.

Ct. App. 1979) ("CC 2545 was designed to impose liability upon the bad faith seller and the manufacturer of a defective product which causes damage to a buyer. That liability expressly includes attorney fees.").

As noted above, the policy requires American to pay all "sums" that Carver becomes "legally obligated" to pay as "damages." There is no dispute that Carver, the insured, would be legally obligated to pay Hollybrook's attorney's fees under article 2545. We conclude from the foregoing that the attorney's fees in this redhibition action are properly included within Hollybrook's damages and the district court erred by refusing to characterize them as included within the policy's insuring agreement. American argues that even so, the fees are excluded by the work product exclusion of the policy. In a redhibition action a work product exclusion may preclude coverage of attorney's fees where the consequential damages directly result from the alleged defective workmanship. *See, e.g., Swarts v. Woodlawn, Inc.*, 610 So. 2d 888, 891 (La. Ct. App. 1992). As noted above, at least some of the damages awarded by the jury for the price of the Carver equipment were properly excluded from Hollybrook's recoverable damages. We leave to the district court what portion, if any, of the attorney's fees are attributable to those excluded damages and may therefore also fall under the exclusion. The district court's judgment is therefore reversed in part and the case is remanded for further proceedings.

AFFIRMED IN PART, REVERSED IN PART; REMANDED.