## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-31090

United States Court of Appeals
Fifth Circuit

**FILED**
November 3, 2016

Lyle W. Cayce
Clerk

HOLLYBROOK COTTONSEED PROCESSING, L.L.C.,

Plaintiff - Appellant

v.

AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:09-CV-750

Before REAVLEY, DAVIS, and JONES, Circuit Judges.

PER CURIAM:*

The sole issue presented by this appeal is whether the district court abused its discretion when awarding attorney's fees under Louisiana's redhibition statute.

I.

Hollybrook Cottonseed Processing, LLC ("Hollybrook") owned and operated a facility that processed cottonseed.    Carver, Inc. ("Carver")

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-31090

manufactured and sold some of the equipment used at Hollybrook's facility. Unfortunately, the Carver equipment was defective, and Hollybrook never turned a profit. Hollybrook failed, then sued Carver and, under Louisiana's direct action statute, Carver's insurers—Sentry Insurance Company ("Sentry") and excess insurer American Guarantee & Liability Insurance Co. ("American").

The lawsuit began in Louisiana state court on April 5, 2009, and was removed to federal court on the basis of diversity jurisdiction. Hollybrook sued for breach of contract and redhibition, a form of products liability unique to Louisiana law. Under the redhibition statute, defendants are "liable to the buyer for," among other things, "reasonable attorney fees." La. Civ. Code art. 2545.

In February of 2011, pursuant to a *Gasquet* settlement, Hollybrook dismissed its claims against Carver and Sentry. As employed here, the *Gasquet* settlement allowed Hollybrook to settle its claims against Carver and Sentry while continuing to litigate against American. *See Gasquet v. Commercial Union Ins. Co.*, 391 So.2d 466, 472 (La. Ct. App. 1980). Though the settlement was $2,900,000, American received a $4,000,000 credit against any future award. In other words, as American stipulated at the time: "Any damages awarded by the jury in favor of Hollybrook which the Court determines to be covered by the policies of insurance issued by Sentry Insurance Company and/or [American], will be reduced by $4,000,000.00." Of this initial $2,900,000 recovery, Hollybrook paid its counsel $966,666.66 under a contingency fee agreement.

The case proceeded to trial against American alone. Due to the improper actions of American's counsel, two trials were required—one to determine liability, another to establish damages. Ultimately, a jury found Hollybrook's damages to exceed $6 million, and after applying the *Gasquet* settlement

2

credit, a judgment of $2,070,000 was entered against American. After the trials, the case reached the Fifth Circuit as a cross-appeal. *See Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.* ("*Hollybrook I*"), 772 F.3d 1031 (5th Cir. 2014). As appellant, Hollybrook secured a ruling that the as-yet undetermined "reasonable attorney fees" to which it was entitled constituted "damages" covered by American's insurance policy. *Id.* at 1036–37. American's arguments as cross-appellant were rejected. *Id.* at 1034–36. The case was then remanded for determination of the proper measure of attorney fees to be awarded. *Id.* at 1037.

During those subsequent proceedings, and nearly seven years after the commencement of the suit, the district court summarized the litigation up until that point:

> During the pendency of this case, over 40 depositions were taken, Carver and its insurers' discovery efforts yielded 8,891 pages of documents, [American] listed 500 exhibits in the second trial on damages, and the case record on appeal contained over 30,000 pages. Counsel tried the case, at various stages, before three district judges, as well as before the Fifth Circuit. In fact, at the time this motion was filed, this Court's docket sheet contained over 640 entries. . . . At the end, counsel was able to obtain to recover millions of dollars for Hollybrook through settlement and the trial and appeal process, and the case resulted in an important decision by the Fifth Circuit on the issue of insurance coverage for attorney's fees in redhibition cases.

In that ruling (the "First Ruling"), the district court recognized that Hollybrook had paid attorney's fees in the amount of $966,666.66 and claimed another "$834,207.92, which is 33% of the $2,502,623.77 it alleges is due on the judgment with judicial interest." Hollybrook claimed these sums as reasonable attorney's fees owed under the redhibition statute. While the district court granted Hollybrook's motion "[t]o the extent that Hollybrook moves for an award of attorney's fees based on its contingency fee agreement," it awarded only $757,940.05 in fees. This figure represents "33% of the $2,296,788.02

No. 15-31090

judgment against" American.[1]  (*Id.*)  After Hollybrook filed a motion for reconsideration, the district court issued a new ruling that substantively adhered to the first (the "Second Ruling").  Hollybrook timely appealed.

## II.

## A.

We ask whether the district court abused its discretion when setting the amount of attorney's fees.  *See Woods on Behalf of Woods v. Int'l Harvester Co.*, 697 F.2d 635, 641 (5th Cir. 1983).  Louisiana "law controls both the award of and the reasonableness of fees awarded." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461–62 (5th Cir. 2002).  A decision based on an error of law necessarily constitutes an abuse of discretion.  *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).  A decision based on a clear error of fact is also subject to reversal.  *See Mathis*, 302 F.3d at 461–62.

## B.

In redhibition suits brought under Louisiana law, successful plaintiffs are entitled to damages including "reasonable attorney fees." *Hollybrook I*, 772 F.3d at 1036 (quoting La. Civ. Code art. 2545) (emphasis omitted).  Trial courts are tasked with setting these fees and are not bound by attorney–client agreements, including contingency fee agreements.  *See Woods*, 697 F.2d at 640–41.  That said, where application of a contingency fee agreement, yields a "reasonable" attorney fee, the contingency fee agreement may be used to set the amount of the award.  *See, e.g.*, *Lafleur v. John Deere Co.*, 491 So.2d 624, 633 (La. 1986).

> Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character

---

[1] The judgment was higher than that reflected in the verdict because it had been recalculated to include judicial interest.

No. 15-31090

of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.

*State Dep't of Transp. & Dev. v. Williamson,* 597 So.2d 439, 442 (La. 1992).

"Attorney fees should be awarded on a case-by-case basis after examining" these *Williamson* factors. *Health Educ. & Welfare Fed. Credit Union v. Peoples State Bank*, 83 So.3d 1055, 1057 (La. Ct. App. 2011).

"[T]he purpose of awarding attorney's fees and expenses . . . in redhibition cases is 'to restore the purchaser, as much as possible, to the condition he enjoyed prior to the sale.'" *Fontenot v. F. Hollier & Sons*, 478 So.2d 1379, 1389–90 (La. Ct. App. 1985) (quoting *Alexander v. Burroughs Corp.*, 359 So.2d 607, 610 (La. 1978)); *see also Young v. Ford Motor Co.*, 595 So.2d 1123, 1127 (La. 1992) ("The purpose of the redhibition action in Louisiana . . . has been to restore the status quo.").

Accordingly,

[w]hile courts are not bound by . . . private contracts and may award such amount as the court feels is just and proper under the circumstances of each case, the award should still be a meaningful reimbursement to plaintiff for the legal expenses that he has been forced to incur because of the actions of the defendant.

*Verbick v. R.G.C. Investments, Inc.*, 477 So.2d 858, 862 (La. Ct. App. 1985).

Here, Hollybrook has paid its attorneys $1,724,606.71 in fees and has, by the district court's order, been reimbursed only in the amount of $757,940.05. This shortfall is significant. *See Linoski v. Fleetwood Homes of Tex., #12*, 873 So.2d 886, 889 (La. Ct. App. 2004). But it is not dispositive. *See, e.g., Blue v. Schoen*, 556 So.2d 1364, 1372 (La. Ct. App. 1990). We must maintain focus on the proper question: whether the award of $757,940.05 represents an abuse of discretion.

While the governing law is rather clear, this case is a somewhat strange one. The challenged award of attorney's fees is explained by two orders. In

the First Ruling, the district court determined that a 33% contingency fee was reasonable and satisfactorily explained why. It then proceeded, however, to misconstrue Hollybrook's request for attorney's fees *and* to base its fee award on a clear error of fact. We elaborate.

The district court summed up the substance of Hollybrook's fees motion as follows:

> Hollybrook now moves the Court for a total award of attorney's fees of $1,800,875, based on a contingency fee of 33% of all sums collected, including all attorney's fees. In addition to the $966,666.66 already paid in attorney's fees, Hollybrook now seeks an additional $834,207.92, which is 33% of the $2,502,623.77 it alleges is due on the judgment with judicial interest.

Within the space of two sentences, the First Ruling indicates that Hollybrook sought both $1,800,875 and $834,207.92. This seeming discrepancy is explicable: the district court believed Hollybrook had already recovered $966,666.66 in attorney's fees from the defendants and sought only the "additional" $834,207.92 to complete "a total award of" $1,800,875. This reading is confirmed by the district court's misstatement in the first ruling that "Hollybrook settled with Carver and its primary insurer, Sentry, for a sum of $2,900,00 and received attorney's fees of $966,666.66."

This interpretation of the First Ruling also clarifies aspects of the order that would otherwise be hard to parse. In the First Ruling, the district court described Hollybrook's motion as one "to award [Hollybrook] attorney's fees consistent with the contingency fee agreement it entered into with its counsel." Then, after finding the contingency fee agreement reasonable, the district court *granted* the motion "[t]o the extent that Hollybrook moves for an award of attorney's fees based on its contingency fee agreement." The district court felt that Hollybrook's request was too high, but just slightly, and *denied* the motion "[t]o the extent that Hollybrook requests attorney's fees in the amount

of $834,207.92." The district court instead awarded $757,940.05 in attorney's fees.

This misunderstanding of Hollybrook's motion is attributable to the district court's mistaken belief that Hollybrook had already recovered $966,666.66 in attorney's fees, and these errors explain the award of $757,940.05. That initial decision, therefore, must be characterized as an abuse of discretion. Nonetheless, in the Second Ruling, entered upon Hollybrook's request for reconsideration, the district court acknowledged its error of fact and yet stood by the original award amount. Because the amount awarded was based on an error and the district court declined to alter the award upon being apprised of the error, the analysis in the Second Ruling can only be described as a *post hoc* rationalization.

We defer to reasoned decision-making, not arbitrary judgments or *post hoc* rationalizations. We have already observed that the Second Ruling is a *post hoc* rationalization. Further, the particular figure reached by the district court, $757,940.05, if a product of reasoned decision-making, *can only be explained by a factual or legal error.* We have already discussed the factual error.

The potential legal error relates to American's liability for all reasonable attorney's fees in this case. The district court explained that it calculated a "reasonable" fee by applying the 33% contingency fee agreement to "the $2,296,788.02 judgment against [American]" rather than the total recovery. This approach overlooks American's role as *excess* insurer and undermines *Hollybrook I.* In *Hollybrook I*, we held that "reasonable attorney fees" owed under the redhibition statute constitute damages covered by the American insurance policy. There is no basis to limit the calculation of attorney's fees to work related to the recovery against American. Doing so results in a windfall for American. Hollybrook is entitled to its reasonable attorney's fees as

7

No. 15-31090

damages covered by American's excess policy. *Hollybrook I*, 772 F.3d at 1036–37.

The $757,940.05 awarded can be explained by a factual error or a legal error. If it was neither, it was imposed arbitrarily. Whatever the case may be, it does not meaningfully reimburse Hollybrook "for the legal expenses that [it] has been forced to incur because of the actions of the defendant." *Verbick*, 477 So.2d at 862. The district court abused its discretion when awarding attorney's fees.

We could remand for further proceedings but find it appropriate to set a proper award amount under the findings of the district court and amend the judgment accordingly. *See Zweig v. Bethlehem Supply Co.*, 186 F.2d 20, 23 (5th Cir. 1951) ("modifying" a judgment only to revise the amount of attorney's fees awarded). Here, the record establishes that the contingency fee agreement results in a reasonable fee. American argues that the district court never determined the reasonableness of the contingency fee as applied to the total recovery. In doing so, it neglects the district court's statement in the Second Ruling that it "agree[d] with Hollybrook that it could have received 33% . . . of the entire amount collected in settlement and as a jury award as attorney's fees." If this statement means anything at all, it means 33% of the entire amount collected was reasonable. Otherwise, the district court *could not* have awarded such a sum and could not have agreed with Hollybrook that such an award was permissible. *See* La. Civ. Code art. 2545.

We agree with Hollybrook and the district court; Hollybrook could have received 33% of the entire amount collected because that figure, $1,714,940.05, is a reasonable fee in this particular case. This litigation has lasted more than seven years and, due to the misconduct of American's previous counsel, required two trials. Hollybrook has already been before the Fifth Circuit once, where it secured a favorable published decision. As the district court

8

No. 15-31090

recognized, discovery in this case was extensive and the record is voluminous. The facts were complicated and highly contested. The two attorneys representing Hollybrook have practiced since 1977 and 1987 respectively and handled numerous jury trials throughout their careers. The "ultimate result" was a total vindication of Hollybrook's suit: the jury found damages to exceed $6 million, and Hollybrook has actually recovered over $5 million. *See Williamson*, 597 So.2d at 442.

## III.

The district court's award of attorney's fees is erroneous. An award of reasonable attorney's fees in the amount of $1,714,940.05, plus judicial interest under 28 U.S.C. § 1961 (calculated from the date of entry of the judgment on the merits[2]), is instead proper, and the judgment is here amended to that effect.

JUDGMENT ORDERED AS AMENDED.

---

[2] *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331 (5th Cir. 1995) (per curiam); *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 545 (5th Cir. 1983) (per curiam) (en banc) (overruled on other grounds by *J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 790 F.2d 1193 (5th Cir. 1986) (en banc)).