**ALLSTATE INSURANCE COMPANY,**
Plaintiff–Appellee,

v.

**Norman J. JAMES and Vera M. James,**
Defendants–Appellants.

No. 87–7305.

United States Court of Appeals,
Eleventh Circuit.

May 18, 1988.

Lawrence M. Wettermark, Linda L. Collins, Mobile, Ala., for defendants-appellants.

Michael B. Beers, Miller & Beers, Jeffrey W. Smith, Montgomery, Ala., for plaintiff-appellee.

Before FAY and KRAVITCH, Circuit Judges, and ATKINS,* Senior District Judge.

ATKINS, Senior District Judge:

Appellants Norman and Vera James ("the James"), defendants below, appeal from an order of the district court denying them a new trial. The motion was based upon an allegation of severe prejudice caused by counsel's closing remarks which suggested to the jury that it had the power to control the cost of insurance through a verdict for the appellee, Allstate Insurance Company ("Allstate"). The James also take issue with the introduction at trial of evidence that they refused to answer questions during a related criminal investigation. We find that the failure of the trial judge to sustain the objection and to instruct the jury after the appellee's inflammatory remarks constituted reversible error. We further determine that the prejudice caused by introduction of the James' lack of cooperation substantially out-

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation

weighed its probative value and therefore should have been excluded.

The James possessed a homeowner's policy through Allstate which provided replacement coverage on their home and its contents for loss due to fire and other unforeseen consequences. Allstate had the option of rebuilding the home and replacing the contents or settling for cash.[1] On April 24, 1983, the James' home was destroyed by fire.

The James purchased their home in 1973 from Felip Reyes to whom they owed a monthly obligation of $176.00. Testimony showed that this obligation had been consistently met since its inception. In 1979, the James gave a second mortgage on their home and other property for $20,000.00. They point to a nearly perfect payment record with only one outstanding payment at the time of the fire. Allstate asserts, however, that the second mortgage called for a reduction of its principal by one thousand dollars ($1,000.00) per year, an event that had yet to occur. In addition, interest payments had been delinquent for two years prior to the fire.

Income tax returns filed by the James for the years 1980, 1981, and 1983, showed fixed obligations far exceeding total income. In December of 1981, Mr. James was terminated from his employment with Farm Vendors, Inc. and in April of 1982, he filed suit against his former employer alleging "a great loss of income" and "great expense" as a result of his alleged wrongful discharge. The complaint stated that Mr. James was unable to find work in the Mobile area. Farm Vendors settled with Mr. James for an undisclosed sum. After leaving Farm Vendors, Norman James worked in his own business buying, rebuilding, and reselling vending machines. But although Allstate portrayed the James as a family mired in financial commitments, the James countered that other than the two mortgages secured by their home, they had only outstanding credit card debts of less than one hundred dollars ($100.00), the second mortgagee had shown no indication of an imminent foreclosure, and they owned several pieces of property and a rental home in addition to their own home.

The evening before the James were to leave on a planned excursion, they visited the home of a relative intending to entrust him with the care of a pet. They testified that, prior to leaving their home that evening, they closed all windows and locked the doors. They returned home at approximately midnight to find their home ablaze.

The fire cause and origin investigator who examined the site testified that the house was locked when the Fire Department arrived. Multiple burn patterns suggested that a flammable liquid had been dispersed throughout the house and ignited. The captain of the Saraland Fire Department, a Saraland fire investigator, an independent fire cause and origin investigator,[2] and the Deputy State Fire Marshal all testified that the fire was intentionally set. No criminal charges were ever filed against the James.

Allstate filed a complaint against Norman and Vera James seeking a declaratory judgment that the James' policy, which was in full force and effect at the time of the fire, be found null and void. Allstate alleged that the James caused or procured the fire and intentionally concealed and misrepresented material facts or circumstances about its cause and origin. The James filed a counterclaim against Allstate for breach of contract and bad faith. Allstate's motion for partial summary judgment on the counterclaim was denied but a pretrial order entered on January 27, 1987, directed the James to strike the cause of action for bad faith. The notice of dismissal of the bad faith count was filed in open court on February 19, 1987.

The James filed a motion in limine to exclude from evidence the fact that they had invoked their fifth amendment privilege against self incrimination by refusing

---

1. The James' policy expressly provides that "[w]e have the option to repair, rebuild, or replace the damaged or destroyed property of like kind and quality within a reasonable time."

2. The independent fire cause and origin investigator, Harold Deese, was hired by the appellee, Allstate.

to answer questions during an interrogation by state and county fire marshals. The James had been given *Miranda* warnings and had consulted with counsel who advised them not to speak. The motion was granted in part, allowing the exclusion of any mention of the term "Fifth Amendment privilege against self incrimination," but the court allowed testimony that the James refused to answer questions or to cooperate at the interrogation. The James' attorney was warned by the court that if he sought to elicit evidence that the James remained quiet on the advice of their attorney, he would "open everything up," presumably meaning that Allstate's counsel would then be permitted to introduce evidence that the James had invoked the Fifth Amendment.

On February 23, 1987, a judgment pursuant to a jury verdict in favor of Allstate was entered. The appellants moved for a new trial, a motion which was denied and subsequently gave rise to this appeal.

The first issue raised on appeal concerns the comments made by counsel for Allstate during closing arguments. Allstate argued:

> "Ladies and gentlemen of the jury, if you were outside the confines of this formal setting of this courtroom, if you were reading the paper and you read the facts of this case, this is the type of case, ladies and gentlemen of the jury, you would look at and you would read the facts and say: Why didn't somebody do something about this? That's why my insurance premiums are so high. Well, that somebody is you six people. And, ladies and gentlemen of the jury we're grown up enough to know...."

At this point, counsel for plaintiffs/appellants objected to the argument as improper and asked that the court give a curative instruction. The judge overruled the objection and denied the request.[3]

The appellants believe that counsel for Allstate improperly appealed to the jurors' self interest by alleging that they had the ability to "do something about this;" compounding this improper suggestion, the court overruled the objection and refused a curative instruction, signalling the jury that such an argument was relevant to the issue at hand. Allstate contends that the James' interpretation of the remarks is incorrect; since the trial judge was in the best position to evaluate the words and their effect on the jury, absent an abuse of discretion, his ruling should not be disturbed. To justify a reversal based upon improper comments by counsel requires that the comments be of a nature to impair calm and dispassionate consideration by the jury. Since the cited remarks did not ask the jury to lower their insurance rates by finding for Allstate, the appellee stresses that the court properly overruled the objection and refused an instruction.

■ The power to set aside a jury verdict for misconduct of counsel is a procedural question that is governed by federal law. *See Illinois Central Railroad v. Staples,* 272 F.2d 829 (8th Cir.1959). Under federal law, the trial judge is given considerable discretion to control the tone of counsels' arguments and, absent an abuse of discretion, the decision of the trial court, which has had the opportunity to hear the offensive remarks within the context of the argument and to view their effect on the jury, should not be disturbed. *See Yeargain v. National Dairy Products Corp.,* 317 F.2d 779 (8th Cir.1963). This court is reluctant to exercise its power to set aside this verdict, a power which it recognized as one to be employed sparingly, *see City of Cleveland v. Peter Kiewit Sons' Co.,* 624 F.2d 749 (6th Cir.1980), but is compelled to do so in this instance.

■ An appellate court will look to the entire argument, the context of the remarks, the objection raised, and the curative instruction to determine whether the remarks were "such as to impair gravely the calm and dispassionate consideration of the case by the jury." *See Spach v. Monarch Insurance Co.,* 309 F.2d 949, 953 (5th

---

3. It is indeed unfortunate that, after presenting a plausible case, Allstate's counsel succumbed to the natural temptation to inject improperly an issue designed to derail the basic concept of a fair trial by threatening the impartial consideration of the case by the jury.

Cir.1962). In the instant case, counsel for the appellants made a timely objection to the suggestive remarks,[4] and therefore review by this court will ascertain whether the remarks affected a substantial right. *See Newman v. A.E. Staley Mg. Co.*, 648 F.2d 330, 335 (11th Cir.1981).

Unfortunately this court does not have the benefit of the entire text of the closing argument before it, however, it is difficult to place the contested remarks within any argument that would cleanse the taint of their improper suggestion. Despite Allstate's assertion to the contrary, the remarks were highly inflammatory and tailored to appeal to the listener's self interest.[5] Every individual who drives a car, owns a home, or carries health or malpractice insurance has felt the effect of the recent insurance crisis. Insurance premiums often require a substantial monetary commitment which few people would not reduce if able. In addition, current media and legislative attention as well as oft publicized verdicts awarding what appear to be massive sums have heightened the potential for prejudice. Counsel explicitly suggested to the jury that they were the "somebody [who might] do something about this." This improper suggestion was emphasized by the implication that the jurors might properly treat the case before it as they would one whose facts they read in a newspaper with all the attendant personal emotional responses. Such a statement, by implying a basis for the verdict other than the evidence presented, could cause the jury to lose sight of the essential issue and "impair its calm and dispassionate consideration of the case."

Counsel, in effect, identified the jurors with the group of persons who might be adversely affected by a decision for the James, implying that the jurors had a financial stake in the outcome of the trial. It is difficult to believe that Allstate's counsel was not urging the jury to believe that a verdict for the James was exactly the type of undesirable impetus to higher premiums that was within their power to control.

Counsel's argument was amplified by the court's denial of the appellants' objection and refusal to instruct the jury. It is important to remember that "[t]he influence of the trial judge 'is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling.'" *Quercia v. United States*, 289 U.S. 466, 470, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933). A judge's actions are "of a sort most likely to remain firmly lodged in the memory of the jury." *Id.* at 472, 53 S.Ct. at 700. Overruling an objection connotes a certain approval of the direction of counsel's argument and refusal to limit its impact through an instruction heightens the possibility that a jury will be persuaded by an improper tone or suggestion within those comments.

An appeal to an individual's personal finances is a powerful argument that needs no added persuasion. The disputed remarks were made during the rebuttal portion of Allstate's closing argument thereby foreclosing any opportunity for the appellants to respond and leaving the improper suggestion foremost in the jurors' mind as they began their deliberations.[6]

Although the appellants were behind on their mortgage at the time their home was

---

**4.** In *Texas Eastern Transmission v. Marine Office–Appleton & Cox Corp.*, 579 F.2d 561 (10th Cir.1978), the court held that improper remarks made by counsel during closing argument were not so prejudicial as to require reversal when counsel did not object to the remarks prior to filing a motion for a new trial.

**5.** State courts have uniformly set aside a verdict when counsel's comments suggest that insurance premiums will rise if a verdict is rendered against the insurance carrier. *See e.g., Williams v. City of Anniston*, 257 Ala. 191, 58 So.2d 115 (1952); *Finney v. G.C. Murphy Co.*, 400 Pa. 46,

161 A.2d 385 (1960); *City of Columbia v. Myers*, 278 S.C. 288, 294 S.E.2d 787 (1982); *Waddell v. Charter Oak Fire Inc.*, 473 S.W.2d 660 (Tex.Civ. App.1971).

**6.** In its opening statement, Allstate referred to a "contract" that it had with "all our other policyholders" which would be breached by paying the James. In closing argument, Allstate referred to the "alternate expense" if unjust claims are paid. Neither statement received an objection from appellants' counsel.

destroyed, there was no guarantee that the James would collect a cash settlement. The policy retained the option of replacing the lost items with like items which would have returned the James to the position from which they began. While it is true that the evidence favored a conclusion that the fire was intentionally set, the James were never prosecuted and although Allstate pointed to the James' behavior the night before the fire as being suggestive of guilt, the evidence also showed that the James had put substantial labor into a home that they allegedly intended to destroy. Finally, although the James were in dire financial straits, the record did not demonstrate that they were in imminent danger of losing their home. The evidence when balanced does not so overwhelmingly weigh in favor of the appellee to conclude that the remarks were harmless or inconsequential. Therefore we find that the trial court erred by overruling appellants' objection and refusing a limiting instruction.

The appellants also contest the submission into evidence of their refusal to cooperate with state and local fire marshals during an investigation into the cause and origin of the blaze. Testimony indicated that Norman James had given a full statement to a representative of Allstate the day following the fire. In addition, Saraland Fire Department officials and The State Fire Marshal took Mr. James' statement on April 27, 1983, at which time he answered all questions directed to him. On July 8, 1983, the James were again requested to appear at the Saraland Fire Station where they were informed of their *Miranda* rights. On advice of counsel, who was not present, the James refused to answer any questions and left the premises. It is this second meeting that was the subject of the appellants' motion in limine.

The appellants sought to exclude any evidence that they had exercised their Fifth Amendment right against self incrimination. The trial court struck any reference to such but allowed the appellee's counsel to elicit testimony that the James had refused to cooperate with the investigation by refusing to answer questions. Appellants' attempt to explain the circumstances would result in, as the court stated, "open[ing] everything up," precluding the appellants from explaining that their silence was on counsel's advice.

■ Under Fed.R.Evid. 403, the trial court may exclude evidence, if, in its discretion, it determines that the probative value of the proffered information is substantially outweighed by the prejudice it will excite. Rule 403 is a grant of discretion to the trial court and the trial judge will be reversed only when he has abused his discretion or refused to exercise it. *See* C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5212 (1978).

■ Examining the evidence as tendered and as finally admitted reveals information of very little probative value. The testimony showed that the James had already cooperated with investigators on two previous occasions and the appellee did not suggest that the James refused information at either of these two prior sessions. Given the circumstances of the third meeting, the James could have easily inferred that they were the subject of an investigation. The fact that they chose to exercise their Constitutional rights as explained to them upon the advice of their attorney provides little probative evidence of their involvement.

Turning to the prejudicial effect of the admitted testimony shows that the probative value is substantially outweighed. The jury was presented only with evidence that the James refused to be cooperative with fire department officials. The judge did not permit the fire marshal to explain that the James had been given *Miranda* warnings and were following the advice of an attorney in refusing to answer. Because it was a law enforcement official relating the circumstances to the jury carries the suggestion that there must have existed evidence linking the James with the fire. Thus, the evidence as finally admitted raised the suggestion that the James were under investigation and showed them as uncooperative without allowing the jury to know that they were exercising their Constitutional rights upon advice of counsel. The double impact of

the testimony, that the appellants were the subject of a criminal investigation and refused to cooperate, far outweighs any probative value that the evidence might have had.

Although the trial judge exercised his discretion in excluding the evidence of the appellants' exercise of their Fifth Amendment right, the evidence as finally admitted proved to be more prejudicial than had the appellants been given the opportunity to explain their failure to cooperate. The trial court not only excluded the reference to the Fifth Amendment right against self incrimination, but also prevented the appellants from explaining their behavior. In essence, the appellants had to purchase the exclusion with their explanation of the circumstances. Such an exclusion was an abuse of the trial court's discretion and therefore must be reversed.

For the foregoing reasons, it is the determination of this court that the case be REVERSED and REMANDED for a new trial.