[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13740
Non-Argument Calendar
_____

D.C. Docket No. 9:16-cv-81696-DMM


PATRICIA GONZALEZ,

Plaintiff-Counter Defendant-
Appellee,

LESHA ROSARIO,

Plaintiff-Appellee,

versus

JAMES BATMASIAN,
individually,
d.b.a. Investments Limited,
MARTA BATMASIAN,
individually,
d.b.a. Investments Limited,

Defendants-Counter Claimants-
Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 14, 2018)

Before WILLIAM PRYOR, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

Defendants James Batmasian and Marta Batmasian appeal from the district court's denial of their motion for a new trial, after a jury returned a verdict in favor of plaintiff Patricia Gonzalez in Gonzalez's action for unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. The defendants argue that the district court should have ordered a new trial because the verdict was (1) contrary to the great weight of the evidence, and (2) influenced by improper and prejudicial statements from the plaintiffs' attorney. After review, we conclude that (1) the evidence adequately supported the verdict, and (2) as to the improper statements, the district court gave curative instructions and did not abuse its discretion in denying the defendants' motion for a new trial. We affirm.

## I.    BACKGROUND

### A.    The FLSA Action

In October 2016, plaintiff Patricia Gonzalez and co-plaintiff Lesha Rosario filed this FLSA action against defendants James and Marta Batmasian. The

complaint alleged that Gonzalez and Rosario worked as a property manager and a legal assistant, respectively, for the defendants' real estate business, elsewhere identified as Investments Limited. The plaintiffs alleged that they were not paid overtime wages to which they were entitled, and that they were regularly instructed to work "off of the clock"—that is, without recording their hours—so that the defendants could avoid paying overtime.

The complaint asserted one claim for recovery of lost overtime wages, liquidated damages, compensatory damages, and attorney's fees. As litigation progressed, it became clear that the key issues were (1) whether plaintiff Gonzalez, a property manager, was exempt from overtime pay under the administrative or executive exemptions of the FLSA, and (2) whether co-plaintiff Rosario, a legal assistant, had actually worked the "off of the clock" hours she claimed to have worked.

## B.    Trial, Verdict, and Motion for New Trial

The three-day jury trial took place on May 1–3, 2017. On the third trial day, the jury returned a verdict in favor of plaintiff Gonzalez and awarded Gonzalez $36,939 in unpaid overtime.[1] The jury also found that the defendants "knew or showed reckless disregard for whether the FLSA prohibited their conduct."

---

[1]Co-plaintiff Rosario never attended the trial. After the close of evidence, the district court granted the defendants' motion for a directed verdict as to Rosario's claim. Rosario appealed that decision separately. On February 23, 2018, this Court affirmed the district court's

3

Subsequently, the district court granted plaintiff Gonzalez's motion for liquidated damages, based on the jury's finding of willful conduct. On May 17, 2017, the district court entered judgment for Gonzalez in the amount of $73,878, consisting of the jury's award of $36,939 in unpaid overtime wages plus another $36,939 in liquidated damages.

The defendants timely moved for a new trial pursuant to Federal Rule of Civil Procedure 59. The defendants argued that (1) the jury's verdict was "against the great weight of the evidence," and that (2) the "egregious" conduct of the plaintiffs' attorney, Chris Kleppin, made it "reasonably probable that the verdict was influenced by [attorney Kleppin's] prejudicial statements."

The district court denied the defendants' motion for a new trial. This is the defendants' appeal.[2]

## II.    STANDARD OF REVIEW

We review for abuse of discretion a district court's denial of a motion for a new trial under Rule 59. Iervolino v. Delta Air Lines, Inc., 796 F.2d 1408, 1419 (11th Cir. 1986).

---

directed verdict against Rosario. See Gonzalez v. Batmasian, __ F. App'x __, No. 17-12751 (11th Cir. Feb. 23, 2018). Nothing herein relates to co-plaintiff Rosario's separate appeal.

[2]Plaintiff Gonzalez cross-appealed from the judgment. However, Gonzalez was the prevailing party in the district court, and stated in her notice of appeal that the cross-appeal was "just being filed in an abundance of caution." On December 14, 2017, this Court dismissed the cross-appeal for lack of standing. See Picard v. Credit Sols., Inc., 564 F.3d 1249, 1255–56 (11th Cir. 2009) (concluding that a prevailing party lacks standing to bring a "contingent cross-appeal").

4

Here, in reviewing the district court's denial of the defendants' motion for a new trial, we will consider both the reasonableness of the jury's verdict in light of the evidence and the allegedly prejudicial remarks made by plaintiffs' attorney Kleppin.  We start with the verdict.

### III.    REASONABLENESS OF THE VERDICT

A district court should deny a new trial "when, after weighing the evidence, the trial court cannot find that the verdict is contrary to the great weight of the evidence."  Id. at 1419.  A district court should grant a new trial "only if the verdict is against the great, not just the greater, weight of the evidence."  Ard v. Sw. Forest Indus., 849 F.2d 517, 520 (11th Cir. 1988).

In determining whether a verdict is contrary to the great weight of the evidence, a district court may not substitute its judgment for that of the jury on questions of fact.  Id.  A district court "must defer to the jury's determination when issues of credibility are involved or the facts are in sharp conflict."  Id. at 522.

### A.    FLSA and Overtime Exemptions

Plaintiff Gonzalez's claim was for unpaid overtime under the FLSA.  The FLSA requires employers to pay covered employees for hours worked in excess of 40 hours per week at one and one half times the employees' regular pay rate.  29 U.S.C. § 207(a)(1).  Ordinarily, an employee bringing a private action for unpaid overtime must establish two elements: (1) that she worked unpaid overtime; and

5

(2) that the employer knew or should have known of the overtime work.  Bailey v. TitleMax of Ga., Inc., 776 F.3d 797, 801 (11th Cir. 2015).

But there are exemptions to the FLSA's overtime requirement.   The two exemptions at issue here, the administrative and executive exemptions, provide that the FLSA's requirements "shall not apply with respect to . . . any employee employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).

Regulations of the U.S. Department of Labor ("DOL") interpret these exemptions.  Under the DOL regulations, an employee is employed in a bona fide executive capacity, and is thus exempt from overtime requirements, if she: (1) is compensated on a salary basis above a certain amount; (2) has as a primary duty the "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; (3) customarily and regularly directs the work of two or more other employees; and (4) has the authority to hire or fire other employees or recommend a change in employment status for other employees.  29 C.F.R. § 541.100(a).  Likewise, an employee is employed in a bona fide administrative capacity, and is thus exempt from overtime requirements, if she: (1) is compensated on a salary basis above a certain amount; (2) has as a primary duty the performance or office or non-manual work "directly related to the management or general business operations of the employer or the

6

employer's customers"; and (3) has as a primary duty "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200.

Thus, in order to prevail on her FLSA claim, Gonzalez must show that (1) she was eligible for overtime pay, because she did not fall within the FLSA's executive or administrative exemptions, (2) she worked overtime hours for which she was not paid, and (3) the defendants knew or should have known about the unpaid overtime. As to eligibility for overtime and the FLSA's exemptions, Gonzalez could establish that she was eligible for overtime by showing she did not meet one of the required multiple elements for both of the two exemptions. 29 C.F.R. §§ 541.100, 200.

## B.    Evidence Supporting the Verdict in Favor of Plaintiff Gonzalez

Gonzalez introduced evidence to support each element of her claim.

As to her eligibility for overtime, plaintiff Gonzalez testified that for most of her employment with the defendants' company Investments Limited, she worked as a commercial leasing agent. In that post, Gonzalez showed office spaces to prospective tenants on behalf of the company. Gonzalez testified that she lacked authority to sign leases, set or negotiate lease prices, approve construction changes that tenants might request, approve major repairs or renovations, or handle invoices for maintenance work done on the properties. According to Gonzalez, she did not

7

direct other employees how to do their job, apportion work among employees, maintain production or sales records for use in supervision or control, appraise employees' productivity and efficiency, promote, demote, or transfer any employee, or provide for the safety and security of employees. Gonzalez further testified that she did not have the authority to hire or fire employees and did not have a management or administrative position.

James Baker, the comptroller of Investments Limited, testified that Gonzalez did not supervise anyone and did not have the authority to hire or fire employees. Witness Baker also testified that Gonzalez was not involved in budgeting or financial planning for Investments Limited, had no say in how property was purchased or leased, had no authority to negotiate on behalf of the company, and took no part in formulating or implementing management policies.

Several lower-level employees testified that Gonzalez did not have the authority to set or raise employee wages, discipline employees, or interview or select employees.

As to working unpaid overtime hours, Gonzalez testified that when she started working for Investments Limited, she was told she would work 40 hours per week and her schedule would be from 8:00 a.m. until 6:00 p.m., with a 1-hour break for lunch. She was paid an hourly wage for this schedule. However, soon after Gonzalez started at the company, defendant James Batmasian told her she

8

was required to work on Saturdays as well. She regularly worked several hours on Saturdays, in addition to coming in early or staying late on weekdays. Gonzalez estimated that she worked an average of 14 overtime hours per week, for which she was not paid.

As to the defendants' knowledge, Gonzalez introduced an email sent by defendant James Batmasian to comptroller James Baker and three other employees, asking them to "confirm that we didn't pay out any overtime this payroll period, nor will we pay any overtime going forward, either." Witness Baker also testified that defendant James Batmasian "did not want to pay overtime." And Gonzalez testified that Batmasian told her to work on Saturdays.

## C.    Analysis of Evidence

As noted above, in order for the jury to find for Gonzalez, it had to find that (1) Gonzalez was eligible for overtime pay, because she did not fall within the FLSA's executive or administrative exemptions, (2) Gonzalez worked overtime hours for which she was not paid, and (3) the defendants knew or should have known about the unpaid overtime.

Here, Gonzalez testified that she worked an average of 14 hours of overtime each week and was not paid for this overtime. She testified that defendant Batmasian directed her to work on Saturdays, which was outside her scheduled hours. An email introduced as a trial exhibit revealed that Batmasian asked his

payroll employees to ensure the company did not pay overtime.  And Gonzalez testified that she did not direct other employees how to do their job, apportion work among employees, maintain production or sales records for use in supervision or control, appraise employees' productivity and efficiency, promote, demote, or transfer any employee, or provide for the safety and security of employees.  Likewise, witness Baker testified that Gonzalez did not supervise anyone, did not have the power to hire or fire employees, was not authorized to negotiate on behalf of the company, and took no part in formulating or implementing management policies.

The defendants' witnesses testified to the contrary, and there was a significant amount of evidence for the defendants too.  But, as the defendants point out in their brief on appeal, this case was "largely a 'he said, she said' trial."  If the jury credited the testimonies of plaintiff Gonzalez and witness Baker, the jury could reasonably find that Gonzalez was not a manager or administrator, that she worked overtime hours for which she was not paid, and that the defendants knew about the unpaid overtime.  See 29 U.S.C. § 207(a)(1); 29 C.F.R. §§ 541.100, 200; Bailey, 776 F.3d at 801.  The district court properly deferred to the jury's credibility determination.  Ard, 849 F.2d at 522.  Therefore, the district court properly concluded that the verdict was reasonable and not contrary to the great weight of the evidence.  Iervolino, 796 F.2d at 1419.

10

## IV.    ATTORNEY KLEPPIN'S STATEMENTS

When a motion for a new trial is based upon the misconduct of counsel, we determine whether the misconduct was "such as to impair gravely the calm and dispassionate consideration of the case by the jury." Vineyard v. Cty. of Murray, Ga., 990 F.2d 1207, 1213 (11th Cir. 1993) (quotation omitted). "[A]bsent an abuse of discretion, the decision of the trial court, which has had the opportunity to hear the offensive remarks within the context of the argument and to view their effect on the jury, should not be disturbed." Allstate Ins. Co. v. James, 845 F.2d 315, 318 (11th Cir. 1988).

In making this determination, we "look to the entire argument, the context of the remarks, the objection raised, and the curative instruction." Id. With respect to curative instructions, we presume that a jury follows its instructions. Gowski v. Peake, 682 F.3d 1299, 1315 (11th Cir. 2012). This is so because "the influence of the trial judge is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling." Allstate Ins. Co., 845 F.2d at 319 (quotations and alterations omitted).

The defendants identify multiple statements by either attorney Kleppin or witness Baker that they contend prejudiced the jury. Before we discuss the statements, they need to be placed in context.

## A.    James Batmasian's Tax Conviction

In 2008, defendant James Batmasian was sentenced to eight months in federal prison after pleading guilty to willful failure to collect or pay over tax, in violation of 26 U.S.C. § 7202.

In the instant litigation, the defendants moved in limine to exclude evidence of Batmasian's prior conviction. In an oral ruling before trial, the district court ordered attorney Kleppin to "stay away from" the prior conviction in his opening statement, but concluded the prior conviction was "probably fair game for impeachment." The district court further stated that the prior conviction "might come in" in connection with the issue of whether the defendants made unreported cash payments to the plaintiffs.

At trial, James Batmasian testified briefly. Although Batmasian was a defendant, he was called as a witness by plaintiffs' attorney, Kleppin. Early in the direct examination, Kleppin asked Batmasian if it was true that he was convicted of "a felony that deals with dishonesty" in the last ten years; Batmasian confirmed that it was true. Defense counsel did not object, and the prior conviction was not raised again during Batmasian's own testimony.

However, as discussed further below, the defendants' argument on appeal is not that Basmasian's prior conviction should not have been mentioned at all during the trial. Rather, their argument is that throughout the trial attorney Kleppin made allusions to the conviction that were outside the parameters of the district court's in

12

limine order, and that the cumulative effect of these allusions and other improper statements prejudiced the jury and require a new trial.

## B.    Remarks and Curative Instructions

We thus turn to the specific remarks to which the defendants object.  The most significant specific remarks are as follows.

First, attorney Kleppin asked a witness about his first meeting with defendant James Batmasian.  When the witness said he did not remember the name of the town where they met, Kleppin asked: "It wasn't the Rock Hill Federal Penitentiary?"  The district court sustained defense counsel's objection and instructed the jury to disregard that question.

Second, in his closing argument, attorney Kleppin told the jury that James Batmasian was "[c]onvicted of a felony with respect to a crime involving dishonesty," that the defendants disliked witness Baker because Baker "always tried to keep the company doing things that were legal," that the defendants were engaged in "one, big scheme to evade payroll taxes on all of that overtime," and that the defendants were "[p]eople from Harvard who really know better, who have been in a lot of trouble before, as you have heard, with this stuff and in other things in their lives."

Third, attorney Kleppin referred several times to an FLSA audit of the defendants' company, which supposedly concluded that plaintiff Gonzalez was not

13

exempt from overtime requirements.  However, no audit report was introduced into

evidence, and Kleppin never deposed the person who supposedly conducted the

audit.  The district court instructed the jury to disregard Kleppin's statements about

the audit, saying:

> What this lawyer is saying is not evidence.  I'm not quite
> sure what he is doing, at this point; but please disregard
> the statements of the lawyer as to evidence.  Let's pay
> attention to the witnesses.

The district court also stated in front of the jury that attorney Kleppin was "trying

to bypass the rules of evidence."  Subsequently, outside the presence of the jury,

the district court said it would not allow the audit into evidence without a proper

predicate.  Attorney Kleppin nevertheless alluded to the audit again the next day.

Fourth, attorney Kleppin suggested that certain emails, which the defendants

produced in discovery, had been altered to remove material information.  Later, the

defendants published the full emails to the jury, showing they were not altered or

redacted.

In addition, on several other occasions, attorney Kleppin suggested the

defendants tried to avoid paying taxes; many of these remarks resulted in sustained

objections.[3]

---

[3]During cross-examination by defense counsel, witness Baker responded to a question
about Baker's own tax returns by saying: "I wasn't going to jail, like Mr. Batmasian, and pay
$250,000 in penalties . . . That man went to jail for eight months."  In front of the jury, the
district court admonished witness Baker not to pursue his "agenda," but rather to "[a]nswer the

14

## C.    Analysis of Remarks

Considering the remarks of attorney Kleppin in light of the entire argument, the defendants' objections, the district court's curative instructions, and other surrounding context, it is far from clear that the remarks "impair[ed] gravely" the jury's deliberations.  See Allstate Ins. Co., 845 F.2d at 318; Vineyard, 990 F.2d at 1213.  The jury reached a verdict that was supported by the evidence.  Attorney Kleppin made several objectionable statements, but the district court addressed many of those statements with curative instructions or other comments that put attorney Kleppin's behavior in context.  A jury is presumed to follow its instructions.  See Gowski, 682 F.3d at 1315.  There is no indication it did not in this case.

Indeed, in some instances attorney Kleppin's statements may have been harmful to his own clients, not helpful.  For example, when Kleppin alluded to the supposed FLSA audit, the district court not only told the jury to disregard Kleppin's statements, but also said it was "not quite sure what [Kleppin] is doing" and that Kleppin was "trying to bypass the rules of evidence."  Likewise, after Kleppin accused the defendants of altering documents before producing them, the defendants showed the original documents to the jury and proved Kleppin wrong.

---

lawyer's questions and don't get into things that have nothing to do with this case."  The district court instructed the jury to disregard the last three minutes of testimony.  Since this was during cross-examination by defense counsel, we focus more on attorney Kleppin's own statements.

Arguably, in these exchanges Kleppin undermined his own credibility with the jury. In any event, we cannot say that Kleppin's improper remarks required a new trial. The district court heard attorney Kleppin's remarks in context and viewed their effect on the jury, and concluded that the jury was not unduly prejudiced. See Allstate Ins. Co., 845 F.2d at 318. Given our deference to the district court in such matters, we conclude that the defendants have not carried their burden to establish that the district court abused its discretion in denying their motion for a new trial. Iervolino, 796 F.2d at 1419.

The defendants rely on our decision in Allstate Ins. Co. and the former Fifth Circuit's decision in O'Rear v. Freuhauf Corp., 554 F.2d 1304 (5th Cir. 1977), but those decisions are materially different and do not help the defendants. In Allstate Ins. Co., the plaintiff, insurer Allstate, sought a declaratory judgment that the defendants' homeowners insurance policy was null and void because the defendants deliberately set the fire that destroyed their home. 845 F.2d at 317. In his closing argument, Allstate's attorney implied to the jury that "[t]hat's why [the jurors'] insurance premiums [were] so high," and suggested that the jury could "do something about this." Id. at 318. The district court overruled defense counsel's objection, refused a curative instruction, and denied Allstate's motion for a new trial. Id. at 316, 318.

16

We concluded that the district court committed reversible error, because Allstate's attorney's remarks were "tailored to appeal to the listener's self interest" and "identified the jurors with the group of persons who might be adversely affected by a decision for" the defendants. Id. at 319. We also emphasized that the attorney's improper argument was "amplified" by the district court's denial of Allstate's objection and refusal to give a curative instruction to the jury. Id.

Here, by contrast, attorney Kleppin's remarks were not tailored to the jurors' self-interest, but rather were aimed at portraying the Batmasians as dishonest. And importantly, here the district court sustained many of the defendants' objections and issued several curative instructions, in addition to other criticisms of attorney Kleppin. The likelihood that the jury's deliberation was "impair[ed] gravely" by Kleppin's remarks was, accordingly, significantly lower than in Allstate Ins. Co. See Vineyard, 990 F.2d at 1213.

In O'Rear, defense counsel violated a specific exclusionary order by the district court. Prior to closing arguments, the district court ordered counsel for both parties not to allude to the dismissal of two third-party defendants from the action. 554 F.2d at 1307. Defense counsel disobeyed this order, alluded to the dismissal in his closing argument, and further suggested that the plaintiff "let [the third-party defendants] just go off without scot-free" in exchange for the third-party defendants' favorable testimony. Id. The plaintiff moved for a mistrial, but

17

the district court declined to rule on the motion and instead submitted the case to the jury, with an instruction to disregard defense counsel's statements. Id at 1307–08.

The former Fifth Circuit concluded that the district court committed reversible error. Id. at 1308-09. The Court noted that defense counsel's argument was contrary to specific court orders and deliberately reemphasized the false impression of a "deal" with the third-party defendants, which counsel had been fomenting throughout the trial. Id. at 1308. The Court also noted that plaintiff's counsel in its closing argument was unable to rebut defense counsel's closing argument due to the exclusionary order, which defense counsel had ignored. Id. at 1308–09. The Court concluded, "This disparity in treatment of counsel by the judge unfairly hamstrung [plaintiff's] counsel." Id. at 1308-09. In addition, the Court found that the district court's curative instruction was inadequate because it did not explain why the third-party defendants were dismissed from the action. Id. at 1309.

Here, by contrast, attorney Kleppin followed the district court's order not to mention defendant Batmasian's conviction during opening argument, and then used the conviction for impeachment when Batmasian testified. While attorney Kleppin should not have necessarily mentioned the prior conviction so often, this is not a case where the district court forbade parties entirely from mentioning a

18

subject matter (as the district court did in O'Rear with the dismissal of the third-party defendants) and then counsel violated that specific order.

In addition, while O'Rear demonstrates that there are times when curative instructions alone do not cure an attorney's improper conduct, that case simply involved worse attorney conduct, less effective curative instructions, and a greater risk of prejudice to the jury than exist in the present case.  For example, the district court here did not apply its evidentiary rulings differently between the parties.  And the district court's curative instructions here did not ignore a lingering conspiracy theory or false impression fomented by attorney Kleppin.

## V.  CONCLUSION

Based on the foregoing reasons, we conclude that the district court did not abuse its discretion in denying the defendants' motion for a new trial.  We therefore affirm the judgment in favor of plaintiff Gonzalez.

**AFFIRMED.**