[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-12626

Non-Argument Calendar

_____

ALEX HAND,
EMILY DRUMMOND HAND,

Plaintiffs-Appellants,

*versus*

ALLSTATE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 6:19-cv-00453-LSC

_____

Before JORDAN, BRANCH, and BLACK, Circuit Judges.

PER CURIAM:

This case arises from an incident on June 30, 2017, when a tree fell on a home owned by Alex and Emily Hand in Jasper, Alabama. On February 11, 2019, the Hands filed a civil action against Allstate Insurance Company for breach of contract and bad faith in Alabama state court, which Allstate later removed to the Northern District of Alabama based on diversity jurisdiction. In Allstate's answer, it asserted a variety of affirmative defenses, including misrepresentation after loss. The case proceeded to a four-day jury trial. The jury found in favor of Allstate—finding that Allstate did not breach the insurance contract or operate in bad faith—and that the Hands made material misrepresentations of their claim to Allstate.

The Hands contend the district court abused its discretion by (1) allowing evidence on Allstate's affirmative defense of misrepresentation after loss; (2) precluding the testimony of Jess Drummond; and (3) allowing disclosure to the jury that the Hands originally retained certain experts called by Allstate. We address each issue in turn and, after review, affirm the district court.

## I.  MISREPRESENTATION AFTER LOSS

The misrepresentation after loss defense was asserted based on Allstate's Additional Living Expenses (ALE) payments to the

Hands.  Allstate asserted the Hands misrepresented the amount spent on ALE.  The Hands contend the district court erred in allowing evidence of misrepresentation after loss, asserting they were denied a fair opportunity to discover the facts known to Allstate to support the defense.

### A.  Additional Living Expenses

Allstate approved a lease for the Hands to stay in a four-bedroom, two-bath house for $4,500 per month while they were out of their home.  The lease was with Gloria Redus, whom Allstate later learned was Emily Hand's mother.  Redus came up with the $4,500 amount by "look[ing] at how much it cost [Emily Hand] to stay at the Holiday Inn for two little tiny rooms that had beds in it and a bath, and they were over $150 a day.  And they had to rent two of them."  The lease with Redus provided payments could be made in cash or check.  On the same day the lease was supplied to Allstate, the Hands submitted a copy of a check Emily Hand wrote to Redus for $11,000—$4,500 for the first month's rent, $4,500 deposit, and $2,000 pet deposit.  However, there is no evidence that check was ever cashed.  Emily Hand testified her mother never cashed the check, and she went and got her mother $11,000 in cash instead.  Allstate continued paying the Hands $4,500 per month for around twenty months, totaling $85,500.  There was no evidence that any check during that twenty-month period was paid to a landlord.  Redus testified she "like[d] to deal in cash," and Emily Hand would bring her $4,500 in cash each month for rent.  Additionally, Redus testified the

Hands quit paying her rent on the property although they were still living there once Allstate cut off ALE expenses.

The Hands also submitted invoices for laundry done at a laundromat, because the Hands did not have a washer and dryer available to them. Emily Hand called Allstate regarding an option for washing clothes because the Hands were not allowed to use the $5,000 washer and dryer in their rental home. Redus testified she "did not want [Emily Hand] using my washer and dryer." This led to Allstate making an $800 monthly payment to the Hands for laundry charges—totaling close to $17,000 during the ALE period. When Allstate inquired if the Hands could move their own washer and dryer into the rental home, the Hands stated the landlord would not allow them to move their washer and dryer. When the Hands' bank records were subpoenaed, only three checks totaling $1,100 to the cleaners were found. Emily Hand testified that the rest of the over $15,000 was paid in quarters to a laundromat.

The Hands also submitted invoices for around $100,000 for rugs and drapes damaged in the home. Allstate paid for these items that the Hands stated were damaged as a result of the loss. However, Allstate never inspected the items, and when Allstate inquired, the Hands had already thrown them away. Emily Hand sent the rugs to a business in Birmingham to be inspected, and Hand made a report they were not salvageable.

## B.  District Court's Evidentiary Ruling

At the beginning of trial, the district court noted the Hands' pending motion to prevent Allstate from presenting any evidence of misrepresentation, acknowledging that Allstate's corporate representative was not allowed to answer specific questions about the misrepresentation defense because the investigation was ongoing.  However, the court asked the Hands' counsel to inform him "what did they not . . . know that you could have obtained from a 30(b)(6) witness."  The court stated:

> [I]t was very clear to me from the objections filed in October of '21 from my summary judgment ruling, from various other motions that have been asserted, that this was known to be an issue in the case, that Allstate, the defendant, felt like your client was not telling the truth about the forty-five hundred dollar [per month] rental claim and the seven hundred dollar[s per month] to do her laundry and the washing and drying machines of her mother, am I missing that? . . . .

> So you need to tell me what it is you were not able to get from them as far as either the discovery or information or testimony so that I can consider keeping them from asserting that defense.

Counsel responded that while they knew of the existence of the affirmative defense, Allstate never answered the question of what facts they had to support the misrepresentation after loss defense.  However, they knew "this broad category, we think there is a problem with the rent, we think there is a problem with the

laundry, we think there is a problem with the rugs." The Hands' counsel agreed that in February or March of 2021, they had a report from an expert of Allstate that "indicated that he believed the rental amount was way over the amount that should have been paid." However, the Hands never took that expert's deposition. They also knew from their own depositions that Emily Hand was paying her mother cash for the $4500 per month rental, which the court noted "could be used to argue that your client was lying." Further, Emily Hand's bank records, which were produced, show no checks that she claimed under oath were paid. Allstate deposed Emily Hand's mother, who claimed there were no bank records, everything was handled in cash. Because the district court found the Hands had access to all the evidence that would be used to show misrepresentation after loss, the district court allowed the evidence.

## C. Analysis

While the Hands argue the district court "shift[ed] the burden to the Hands to establish prejudice for Allstate's discovery abuses," Allstate did not abuse discovery. Although Allstate did object to certain questions at the corporate representative's deposition because of the ongoing investigation with regard to ALE, the Hands failed to articulate what they did not have access to that they could have obtained from a 30(b)(6) witness.

The evidence relied upon for the misrepresentation defense came from other witnesses at trial including Mark Burchfield (the Hands' dwelling adjuster), Emily Hand, and Gloria Redus. The

Hands point to no evidence about the $4,500 paid in cash each month to Redus, the almost $17,000 in laundry expenses, and around $100,000 in damage to rugs and drapes that they did not already have access to.  It was not an abuse of discretion for the district court to allow this evidence.  *See United States v. Clay*, 832 F.3d 1259, 1314 (11th Cir. 2016) (reviewing for abuse of discretion the district court's evidentiary decisions).

## II.  WITNESS PRECLUSION

The Hands contend the district court abused its discretion in excluding the testimony of Jess Drummond based on the Hands' failure to disclose him.  Jess Drummond is Emily Hand's ex-husband and a former owner of the home on which the tree fell.  The Hands did not disclose Drummond as a witness during the first discovery period or the reopened discovery period.  He was not disclosed until months after discovery was closed.  They argue the fact Drummond was identified during the deposition of Emily Hand as a prior owner of the house who had participated in renovations was effective supplementation.  The district court disagreed and disallowed Drummond's testimony.

Rule 26 of the Federal Rules of Civil Procedure requires a party to disclose "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would solely be for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  Rule 26(e) requires a party who has made a disclosure under Rule 26(a) to supplement or correct its disclo-

sure if it learns the disclosure is incomplete or incorrect if the additional or corrective information has not otherwise been made known to the other parties during the discovery process.  Fed. R. Civ. P. 26(e).

The district court did not abuse its discretion in not allowing Drummond to testify.  *See Romero v. Drummond Co.*, 552 F.3d 1303, 1322 (11th Cir. 2008) (holding the district court did not abuse its discretion in excluding testimony from a late-disclosed witness where the plaintiffs lacked a good explanation for the delay in disclosing the witness).  The Hands knew of the existence of Drummond throughout discovery and did not disclose him—even through an extended discovery period.  Emily Hand's mention of him during her deposition was not effective supplementation.  It was not an abuse of discretion for the district court to preclude Drummond's testimony at trial.

## III.  RETENTION OF EXPERT WITNESSES

The Hands moved in limine to preclude Allstate from calling engineers originally retained by the Hands, but later withdrawn, or if called by Allstate, from disclosing who hired the engineers.  During the claims process, the Hands consulted several engineers to inspect the premises, but the Hands did not intend to call them as witnesses.  Allstate reimbursed the Hands for the expense incurred in retaining the engineers.  The district court allowed Allstate to call those engineers originally retained by the Hands, but did not allow Allstate to introduce evidence that the Hands originally retained them.

A. *Patrick Edwards' Testimony*

During the testimony of one of the engineers, Patrick Edwards, the Hands asked if he was being paid for his testimony. Edwards answered, "I hope I am.  I wasn't paid for the original inspection[.]"  After the conclusion of Edwards' testimony, the district court invited the attorneys to a sidebar, inquiring whether the Hands paid Edwards' engineering firm for their services.  The Hands' counsel responded that he did not know, and the court stated if Edwards was not paid, it was "fair game for Allstate to say we paid her to pay them.  Right now it appears that Allstate did not pay the guy."  The court opted to give the following instruction to the jury:

> Ladies and gentlemen, I need to clear one thing up. Allstate did not hire the last witness to do the initial inspection and was not then responsible for paying him.  He made some statement that he wasn't paid. And I don't want you to—I don't want to leave that hanging there.

The Hands contend the district court erred by giving the curative instruction to Edwards' non-responsive answer, because "[t]he instruction leaves only the conclusion that the Hands hired [Edwards] and did not pay him."  They contend allowing the witness to open that door was "explosive and prejudicial error" and merits setting aside the verdict and granting a new trial.

We disagree.  Assuming the district court was required to limit evidence of retention of experts, *see Peterson v. Willie*, 81 F.3d 1033, 1037-38 (11th Cir. 1996), the district court's curative instruc-

tion did not leave only the conclusion that the Hands hired Edwards and did not pay him. Instead, it clarified that Allstate did not hire Edwards and was not responsible for paying him. While the jury could infer the Hands hired Edwards and did not pay him, it is not the only conclusion that could be made from the curative instruction. We cannot say that Edwards' remarks and the information given in the curative instruction "were such as to impair gravely the calm and dispassionate consideration of the case by the jury." *See Allstate Ins. Co. v. James*, 845 F.2d 315, 318 (11th Cir. 1988).

## B. *Exhibit 58*

During trial, Allstate offered "Defendant's Exhibit 58" which was a report from Alabama Foundation Specialists (AFS). The Hands objected because the exhibit contained a reference that AFS recommended the Hands contact Carlysle Gibbs, which is one of the engineering firms the Hands originally retained. When cross-examining Emily Hand regarding AFS, Allstate's counsel inquired whether she recalled telling AFS that she would be hiring an engineer. The Hands' counsel requested a sidebar because Allstate was "slip[ping] in there the thing about the engineer. When he slips that in there . . . he can't get into prior retention." When Allstate resumed cross-examination of Emily Hand, Allstate's questioning and Hand's answers showed that AFS directed Hand to hire an engineer, and that Hand did not initiate that conversation with AFS.

Then, during closing arguments, Allstate presented an un-redacted version of Defendant's Exhibit 58. Right after the exhibit was presented, the Hands' counsel stated, "[p]ull that down." Allstate's counsel apologized and took the exhibit down. The Hands' counsel approached and objected that Allstate had shown "[t]he retention—the part of the AFS records that you said were going to be excluded. And they agreed to redact them and now they have shown them to the jury." The judge found the exhibit "was up for a matter of less than ten seconds . . . [and there were] easily over one hundred words from the top down to the bottom before they would get to, I referred David Carlysle." The district court noted it had already stated it was a close call whether the information should be redacted, and had only decided not to let Allstate go into who retained the experts "out of an abundance of caution." The Hands' attorney declined the judge's offer to say something to the jury, and closing arguments resumed.

The Hands contend a new trial is warranted because Allstate twice violated the district court's order excluding evidence of expert retention.

The Hands' argument is without merit. As to the cross-examination of Emily Hand, Allstate did not disclose anything about retention of the experts testifying at trial. Allstate merely asked if AFS recommended she hire an engineer, and then further questioning clarified AFS directed Hand to hire an engineer, and that Hand did not initiate that conversation with AFS.

As to an unredacted Exhibit 58, the district court was correct in finding the exhibit, in the middle of a lengthy paragraph, states "I referred David Carl[y]sle . . . ." The district court observed "there is no way a human being could read down and get to that part of it," in the time the exhibit was visible. The exhibit was up so briefly that it is doubtful the jury had time to read the offending four words, which were buried amid several other lines of text. Further, there is no evidence Allstate intentionally showed the exhibit. We conclude the brief display of the unredacted exhibit did not affect the Hands' substantial rights, and a new trial is not warranted. *See Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1465 (11th Cir. 1994) (explaining a party is entitled to a new trial if the jury was influenced by inadmissible evidence because it affects a party's substantial rights).

## IV. CONCLUSION

The district court did not abuse its discretion by (1) allowing evidence on Allstate's affirmative defense of misrepresentation after loss; (2) precluding the testimony of Jess Drummond; and (3) allowing disclosure to the jury that the Hands originally retained certain experts called by Allstate.

**AFFIRMED.**